## MRS. AUGUSTA HELLER ET AL. v. MORITZ HELLER.

### No. 4013.   Decided March 11, 1925.

### (269 S. W., 771.)

**1.—Case Stated—Will—Community Property—Power of Sale.**

Decedent, together with his wife, made a joint will whereby each, under identical provisions, devised his or her entire property to the survivor, to be held until death or remarriage, then to be divided into two parts, that of decedent and that of the surviving wife, the former to be divided among his heirs, and the surviving wife "to make such disposition of her part as she may deem fit."   She was made executrix without bond, and was given "the right to sell or otherwise dispose of any part of our community property and invest the proceeds of such sale or disposition as she may think best."   The surviving wife, not having remarried, 18 years after the husband's death conveyed certain land which had been community property to one of their sons, for a recited consideration of ten dollars and love and affection; and she declared, though not in the conveyance, that this was done for services

114 Tex. Sup.—26.

rendered by him for sixteen years in the care and management of the estate. The other heirs sued to set aside this deed as unwarranted by the power of sale conferred by the will, which they claimed to authorize sale only for reinvestment. *Held,* construing the entire will, that its intent was to convey a life interest and control, in the survivor, of the community half belonging to decedent, leaving her community interest as her own and to her own disposition. And that her deed, as tenant in common with the heirs, and not appearing to prejudice their rights in partition to their interest in the estate left by the father, in which they could be compensated for their interest in the land so conveyed, was valid, irrespective of whether or not warranted by the power of sale conferred by the will. (Pp. 409-414).

### 2.—Will—Construction—General Intent.

The testator's intention is to be collected from the whole of the will taken together, and not from detached portions. (P. 410).

### 3.—Same.

In construing a will the predominant idea in the testator's mind, if apparent, is heeded, as against all doubtful conflicting provisions which might of themselves defeat it. The general intent and particular intent being inconsistent the latter must be sacrificed to the former, that is the general intent will be made effective. (P. 410).

### 4.—Same.

A later clause in a will must be deemed to affirm, not to contradict, an earlier clause, if such construction can fairly be given it. (P. 410).

### 5.—Same—Respective Property.

A will by husband and wife directing by each in the same terms "the following disposition of our respective . . . property," evidenced a purpose to keep their respective community interests separate. A subsequent clause directing the disposition of "the then remaining property" on the death or remarriage of the survivor, in view of this general purpose, should be taken as referring to the remaining property of the testator himself. A direction that in that event the property, theretofore kept together and managed by the executrix, should be divided into two equal parts, one half to go to decedent's heirs and the other to the surviving wife, to be disposed of as she deemed fit, was consistent with the dominant purpose that the respective community interests were kept separate. (Pp. 410-413).

### 6.—Same.

Under such will the surviving wife took the use of decedent's community interest for life or until remarriage, with power of management as executrix, and retained her respective community interest as her own in fee as tenant in common. The will was not a joint will in the sense that either was attempting to dispose of the property of the other. (P. 412).

Questions certified from the Court of Civil Appeals for the First District, in an appeal from Fayette County.

The Supreme Court, having referred the questions certified to the Commission of Appeals, Section B, for its opinion thereon, here adopt same, to be certified to the Court of Civil Appeals as its answer.

*George Willrich,* for appellants.

The opinion of the majority of the Court of Civil Appeals in this case states the correct rule of law in reference to the facts stated in the certificate, and Mrs. Heller had no power to convey the land under the facts shown. Heller v. Heller, 233 S. W., 870; Larrabee. et al. v. Porter, et al., 166 S. W., 395; Reese v. Medlock, 27 Texas, 120, 123 and 124; Weissetal v. Goodhue, 98 Texas, 274 and 281; Ledgerwood v. Dashiell, 177 S. W., 1010 & 1013; Moore v. Moore, 198 S. W., 659; Littler v. Dielmann, 106 S. W., 1137; Sherman v. Goodson's Heirs, 219 S. W., 839; Pomeroy's Equity Jurisprudence, 1st Ed. Vol. 2, Pars. 1062, 1067, 1071-2, 3, 4 and 5; Gibson v. Gibson, 219 S. W., 651; Fernandez v. Martin, et al., 225 S. W., 27.

The transaction with the defendant was not a sale or disposition for reinvestment, did not include future services, and the trustee had no such authority under the will which was the source of her power and expressly referred to in the deed giving notice of her limited powers under said trust.

Unless express contract to that effect, services rendered by a child to its parents, even though the child be an adult, are gratuitous and are not the basis of a valuable consideration. Wright's Administratrix v. Thomas Donnell, 34 Texas, 291; Schrimpf Adm'x v. Settegast, 36 Texas, 296; Bonner v. Bradley, 36 S. W., 1014; Taylor v. Deseve, 81 Texas, 246.

*Edward H. Moss,* for appellee.

The will of Theophilus Heller, by its express provisions, gave Mrs. Anna Heller, his surviving wife, absolute discetionary power to dispose of their community property during her life time and left the interest of other beneficiaries contingent and conditonal upon the acts of said Mrs. Anna Heller in reference to said property during her life. Heller v. Heller, 233 S. W., 870; Trinity County Lumber Co. v. Pinckard, 23 S. W., 720.

The conveyance by Mrs. Anna Heller, surviving wife of Theophilus Heller, deceased, of date April 3, 1916, of the 147 acres of land to appellee, her son, for $10 cash, love and affection and for services rendered and to be rendered to Mrs. Anna Heller, the surviving wife of Theophilus Heller, deceased, by appellee, Moritz Heller, in assisting the said Mrs. Anna Heller in caring for and preserving the community estate of herself and deceased husband, is based upon a valuable consideration, and the fee simple title to said land passed to and now vests in Moritz Heller, appellee.

Mrs. Anna Heller was fully authorized by the will of her deceased husband to make the conveyance of April 3, 1916, to her son, conveying to him the 147 acres of land in question, for his services rendered in assisting her in caring for and preserving the community

estate of herself and deceased husband, which services were necessary for the preservation of said estate.

Mr. Presiding Judge POWELL delivered the opinion of the Commission of Appeals, Section B.

This case is before the court on questions from the Court of Civil Appeals for the First Supreme Judicial District, certified as follows:

"This suit was brought by appellants against the appellee to cancel a deed and to recover the title and possession of an undivided 5/6 interest in two tracts of land of one hundred and forty-seven and twenty-five hundredths acres, respectively, and for rents and partition of said land.

"The plaintiffs are children and grandchildren of Theophilus and Anna Heller, deceased; some of the children being joined *pro forma* by their husbands, and the minor grandchildren suing by their legal representatives. The defendant is a son of Theophilus and Anna Heller.

"The deed sought to be cancelled was executed by Anna Heller after the death of Theophilus Heller and conveys the land in controversy to defendant. This deed recites that it conveys the land by virtue of the power vested in the grantor by the last will and testament of her deceased husband, Theophilus Heller, and in consideration of the sum of ten dollars cash in hand paid, and for the further consideration of love and affection of the grantor for the grantee.

"Plaintiffs attack the deed on the ground of the lack of authority in the grantor under the provisions of the will of Theophilus Heller to convey the land for the purpose and consideration recited in the deed.

"In reply to this, the defendant's answer avers:

'That said deed was made to appellee by the said Mrs. Anna Heller for and in consideration of $10.00 cash and love and affection that Mrs. Heller had for her son, Moritz Heller, and, while not so recited in the deed, yet the same was also executed for and in consideration of the services to be rendered and for services appellee rendered to his mother, Mrs. Anna Heller, surviving wife of Theophilus Heller, deceased, for the past sixteen years, in assisting the said Mrs. Anna Heller in managing the community estate of herself and husband, which consisted of about two thousand acres of land, of which five hundred or six hundred acres were in cultivation, and assisting his mother in caring for her stock and all other property belonging to said community estate of Theophilus Heller, deceased, and Anna Heller, all of which property was of such nature as to render it impossible for Mrs. Anna Heller, surviving wife of Theophilus Heller, deceased, to care for in her own proper person, and she was compelled to call to her aid some one to assist her in caring for said property

and managing said estate, and she did call to her assistance this appellee, who continuously for the past sixteen years prior to the death of his mother, the said Mrs. Anna Heller, looked after the wants of his mother and the management of the community estate of his mother and father, both in renting the premises and keeping the same in repair and in caring for the stock belonging to the community estate of his mother and father, and that the mother of this appellee, the said Mrs. Anna Heller, surviving wife of Theophilus Heller, deceased, did, on the 3rd day of April. 1916, execute and deliver said deed to said 147 acres of land to this appellee in consideration of the services that this appellee rendered for his mother, and the services to be rendered by this appellee for his mother, which services were made necessary during said sixteen years aforesaid for the assistance of the said Mrs. Anna Heller, now deceased, in caring for herself and the property of the community estate of herself and deceased husband, and were of the reasonable value of $500.00 per year. That the appellee, Moritz Heller, did render the services which were part of the consideration for which said deed was executed and did assist his mother in preserving and caring for the community estate of herself and husband up to the time of her death.'

''The trial in the court below without a jury resulted in a judgment in favor of the defendant.

''The material facts disclosed by the record are as follows:

'Theophilus Heller died in 1891, and his wife, Anna, in 1919. Prior to his death, Theophilus and Anna Heller executed a joint will, the provisions of which disposing of the property of the respective testators are identical. By this will Theophilus Heller, after directing the payment of his debts and the expenses of his last sickness and funeral, thus disposes of his property:

'III. All the then remaining property, be the same real or personal property, I hereby devise and bequeath to my wife, Anna Heller. nee Munke, she shall have and hold the same together with all the rights and appurtenances thereto in anywise belonging during her life or until she may marry again, in which case she shall make two equal parts of the then remaining property, one to be styled her and the other to be styled my part, and she may make such disposition of her part as she may deem fit, but my part shall be equally divided among the children of our marriage, viz: Theophilus Heller, John P. Heller, Moritz Heller, Margaretha Heller, Agatha Heller, and Thekla Heller.

'IIII. To the executrix of this my part of this my last will and testament I appoint my wife, Anna Heller, nee Munke, and I do hereby especially ordain and decree, that she shall not be held to

give bond or other security whatever for the carrying out and due performance of the disposition of this agreement and my last will and testament.'

''These provisions are followed by identical provisions by which Anna Heller disposes of her property.

''The remaining provisions of the will are as follows:

'IX. After the demise of both of us, Theophilus Heller and Anna Heller, wife of Theophilus Heller, and neither of us having entered into a second marriage, all of the then remaining property, both real or personal property, shall be equally divided between our children, and if any of our children or child shall have been married and subsequently demised the offsprings of such child or children shall receive the share due to such child or children, but in no case shall the surviving husband or wife of such child receive any benefit of our property, but the same shall be for the benefit of the said offspring exclusively.

'X. The survivor of either of us, Th. Heller or A. Heller, nee Munke, shall have the right to sell or otherwise dispose of any part of our community property and invest the proceeds of such sale or disposition as he or she may think best.

'XI. After the demise of both of us the honorable. county probate court having jurisdiction shall appoint an executor with the will annexed to carry into execution the provisions of this will and testament.'

'At the time of the execution of this will and at the time of the death of Theophilus Heller, he and Anna Heller owned as community property 2000 acres of land, of which the land in controversy is a part, and in addition thereto community property consisting of cattle and other personal property of considerable value.

'Upon the death of Theophilus Heller in 1891, Anna Heller had his will, before set out, probated in the county court of Fayette County, qualified as executrix thereunder, took possession of all of the community property, and held and enjoyed the same exclusively until her death in 1919.'

'Upon the issue of the consideration for the execution of the deed, Mr. E. R. Vogt, who wrote the deed, testified:

'I wrote the deed sought to be cancelled in this case for Mrs. Heller. At the time I wrote the deed I was in the home of Mrs. Heller at Ammansville. Squire Fietsam was there with me. Mrs. Heller told me that she wanted me to write the deed and I asked her what the consideration would be, and she said that she wanted to deed the 147 acres of land in question to Moritz Heller for what she owed him for his services in looking after the Heller estate for her from the time her son Theophilus Heller, Jr., died, up to the time of writing

this deed. I told her that I could not write that in the deed, but that a consideration of $10.00 and love and affection would be a good consideration, and I wrote that in the deed, and I am the author of the consideration stated in the deed, that is, $10.00 and love and affection. I am responsible for putting that in there. At the time the deed was actually executed, she told me that she was executing the deed for services that Moritz had rendered to her during these years. She said to me that she owed Moritz Heller for his services during these years and that she wanted to reward him for what she owed him for said services during all those years since the death of Theophilus Heller, Jr., and assisting her in caring for the community estate of her deceased husband and self. The true consideration for the execution of the deed by Mrs. Heller to her son, Moritz, was the services of Moritz Heller that he performed for her in looking after the entire Heller farm, which consisted of something like about two thousand acres of land, as stated by her at the time. As to what kind of work, she said it was everything, that he was the only one of the children who did anything for her.

'There was not anything said at that time as to Moritz Heller continuing the services; but the consideration was the services that he had performed in looking after the entire property.

'As to the number of acres of land in cultivation, there were ten or twelve tenant houses; and I don't know but there was something over eighteen hundred acres in the bottom tract, possibly between six and eight hundred acres in cultivation; I have never surveyed that separate. These rent houses and this farm that I speak of is the property that she told me he looked after during these years.

'As to her telling me that he looked after the cattle, she told me that he looked after all her business, attended to all her business.

'The date when Theophilus Heller, Jr., died has slipped my memory. He has been dead a number of years, fifteen or sixteen years; must have been dead that long. I know he died and I have heard when he was a corpse, it must have been fourteen or fifteen or sixteen years ago.

'I was well acquainted with Mrs. Heller. She was not physically able to look after the farm nor the stock. She never said anything to me as to repairs on the farm house. She just made the statement that he did all the work, looked after all her interests. That is the way she stated it.'

"Mr. Fietsam, who was present when the deed was executed, testified:

'I was told to come, Moritz told me he wanted to buy the place, that is what he told me, and Vogt was coming out tomorrow and he wanted me to be there and assist in surveying, so we both went up

there (Vogt and I) to survey that part. Then he (Vogt) sat down and wrote the deed and asked the consideration you know, asked her what consideration, and then it was she said she did not want no money, for him to pay her no money, she owed that for services he had rendered or was rendering for her; that is what she told him. She may have specified some particular time that he worked, I would not say positively that she did or did not.'

"The evidence further showed that for thirteen years prior to the execution of the deed, and the remaining years of Mrs. Heller's life, the defendant had general charge of her business. As stated by the witness Fietsam: 'He looked after the farm, rented the property, collected rents, repaired the rent houses, wells and fences, as her foreman; and the renters when they wanted anything would go to Moritz Heller. This estate was a rich estate; it kept itself up; and when she first taken it up I was told there was $10,000.00 worth. of debts against it. When I first knew the estate as a man, it was a going estate and kept itself up.'

"The inventory of the estate introduced in evidence by appellants, filed after the death of Anna Heller, shows:

| | |
|---|---|
| 'Cash on hand, | 364.54 |
| Time deposits, First State Bank, Weimar, | 3,450.00 |
| Bonds and W. S. S., | 1,150.00' |

"The evidence shows that all of the children cultivated parts of the lands of the estate free of rent.

"It was shown that the reasonable value of the services rendered Mrs. Heller in the management of the estate by the defendant equalled or exceeded the value of the land in controversy.

"Upon considering this appeal at a former day of this term the majority of the court were of opinion that under the will of Theophilus Heller, Mrs. Heller could convey the land of the estate only for the purpose of reinvesting the proceeds for the benefit of the estate, or for the purpose of raising funds necessary for the care and preservation of the estate; and that upon the facts above stated the deed from Mrs. Heller to appellee should be held unauthorized and void, and the judgment of the court below reversed and judgment here rendered for the appellants.

"Justice Lane dissents from these views, and is of opinion that the judgment should be affirmed, or, in the alternative, the cause should be remanded for a new trial.

"The case is now pending before us on motion for rehearing and we deem is advisable to certify for your decision the following questions:

"First: Under the terms of the will before set out, was Mrs. Heller authorized to sell the land in controversy for any purpose

other than the reinvestment of the proceeds for the benefit of the estate, or to obtain funds necessary for the care and preservation of the estate?

"Second: Do the facts before set out raise an issue as to whether the conveyance by Mrs. Heller to appellee was authorized under the will of her deceased husband?

"Third: Under the pleadings in this case, was the burden upon appellants to show that the conveyance by Mrs. Heller to appellee was for a purpose and consideration not authorized by the will under which she acted?"

The certificate does not contain all of the will, but all of it appears elsewhere in the record before us.

The will begins as follows:

"The State of Texas, County of Fayette.

"Know all men by these presents: That we Theophilus Heller, and Anna Heller wife of Theophilus Heller of the County of Fayette and State aforesaid, of our own free will and accord, and, in full possession of our mental faculties have made this day this agreement and our last will and testament, and, do hereby ordain and decree: That after our demise or the demise of either of us the following disposition of our *respective* remains and property shall be made, to-wit:

"I. I, Theophilus Heller do hereby ordain and decree: That after my demise my body shall be interred without any unnecessary display and costs, and according to the rites of the Catholic Church."

We have underscored the word *respective,* not for the purpose of giving it added consideration, but that it may not be overlooked.

Paragraph VI of the will is likewise not set out in the certificate. It reads:

"VI. The expenses of my funeral, expenses of last sickness and all other just debts with which my estate may be properly chargeable shall first be paid. All the then remaining of my share of the community property between my husband and myself, I devise and bequeath to my husband Theophilus Heller, he shall have and hold the same, together with all the rights and appurtenances thereto in anywise belonging during his life or until he may marry again in which case he shall make two equal parts of the then remaining property, one to be styled his part and the other to be styled my part of the community property, and he may make such disposition of his part of the community property as he may deem fit, but my part of the community property shall be equally divided among my children, viz: Theophilus Heller, John P. Heller, Moritz Heller, Margaretha Heller, Agatha Heller and Thekla Heller."

This is a most interesting will and somewhat difficult of con-

struction. Because of its rather novel and unusual terms, we have felt unusually free to consult with the Supreme Court in its. construction before preparing our opinion. That court has rendered us much assistance.

What is the proper construction of this will?

Of course, an elementary rule of construction with reference to wills is that the testator's intention is to be collected from the whole of the will taken together, and not from detached portions. Where, however, the language of one part of a will is not easily reconciled with that used in another, the principal and subordinate provisions should be construed in their due relation to each other, and the intent which is disclosed in the express clause ought to prevail over the language used in subsidiary provisions, unless modified or controlled by the latter. And a clearly expressed intention in one portion of the·will will not yield to a doubtful construction in any other portion of the instrument. Schuler on Wills, 5th edition, Volume 1, Section 468.

The rule suggested is sometimes restated to the effect that in construing. a will the predominant idea in the testator's mind, if apparent, is heeded as against all doubtful conflicting provisions which might of themselves defeat it. "The general intent and particular intent being inconsistent, the latter must be sacrificed to the former." That is, the general intent will be made effective. Schuler, supra, Section 476.

It is also said that a later clause in a will must be deemed to affirm, not to contradict, an earlier clause, if such construction can fairly be given. Schuler, supra, Section 474.

Having in mind these general rules, we direct attention to the last sentence in the first paragraph of the will. This first paragraph, after reciting the names of the testators and certain other expressions, then undertakes to give the main, dominant, and controlling purpose of the will in this language: "That after our demise, or the demise of either of us, the following disposition of *our respective remains and property* shall be made, to-wit:"

From the underscored language above it is plain that the dominant purpose of the testators in this will was to maintain the separateness of their "respective remains and property". In other words, it is plain from this that the purpose of the testators was to make disposition of their property *respectively,* keeping it just as separate as they kept their *"remains"*.

. The balance of the will ought to be construed in harmony with this purpose as stated in its inception, if it can be done.

When we pass to numbered paragraph III of the will, where the testator Theophilus Heller undertakes to dispose of "the then remain-

ing property'', it is manifest that he was undertaking to dispose of the property to which reference had been made in the initial clause,— that is, to his ''respective property''. He had stated in the governing clause, which we have quoted, that one of his purposes was to dispose of his respective remains and to dispose of his respective property. The paragraph numbered I did dispose of his ''respective remains'', and we have no doubt that his purpose in paragraph III was to dispose of his ''respective property'', and that by the phrase ''remaining property'', etc. as used in this paragraph III he meant his respective remaining property.

When we pass to paragraph VI of the will, it is manifest that this interpretation is correct, because Mrs. Heller, after having disposed in paragraph V of her ''respective remains'', passes then, of course, to the disposition of her property. The language used in paragraph VI shows that what she is disposing of is not her husband's property, but ''my share of the community property'',—that is, her respective property.

It is noted that Mrs. Heller bequeathes her share of the community property which was her ''respective property'' to her husband, who is to hold the same ''during his life'', or ''until he may marry again.'' Mr. Heller makes a similar disposition in favor of his wife of his property. However, Mrs. Heller provides that should her husband marry again, then he is to make two parts of the then remaining property,—that is to say, the property which he owned himself and which he had received from her under the will. One equal part of this property, to-wit: ''the community property'' of Mrs. Heller herself, is. to be divided among their children. This is expressly stated in paragraph VI of the will.

After having provided that her community property should, in the event of remarriage, be at that time given to her children, this paragraph then expressly states that as to Mr. Heller's ''part of the community property he may make such disposition * * * as he may deem fit.'' It is perfectly plain from this that as to Mr. Heller's part of the property, he might do with it as he pleased, unless of course, that right should be limited by other portions of the will. We find nothing in the will to limit his disposition of it, and therefore must give full benefit to the wording used.

Paragraph III of the will, which is Mr. Heller's will, is subject to the same explanation as that given of Mrs. Heller's, and it is unnecessary to repeat it.

Thus far in the will, however, no disposition has been made of the property of a surviving spouse who did not marry again. Since the very purpose of the will is to make provision so that the testators will not die intestate, we must assume that the parties intended by

some provision of the will to make a complete disposition of the property so that they, or either of them, would not die intestate. This purpose finds expression in paragraph IX of the will. By this paragraph it is expressly provided that after the death of both Mr. Heller and his wife, and neither of them having entered into a second marriage, then the remaining property, both real and personal, is to be divided among their children, etc. By the phrase "the then remaining property" is meant the respective property of each of them. We say this for the reason that the initial clause of the will stated that its purpose was to make disposition of their respective property. It does not mean that either of the spouses was attempting to will away the property of the other. The will was not a joint will in that sense.

In this case, as we understand it, one of the spouses had died, and the other, of course, had inherited a life estate in the community property of that spouse, and had not remarried. Therefore, the surviving spouse at the time of her death held her own half of the community property and a life interest in that of the deceased spouse.

The plain purpose and application of paragraph IX is that as to the remaining property of the first spouse deceased it should be divided under the express terms of this will of that deceased spouse among the children, and under the express terms of the will the half of the community property owned by the spouse which last died was also to be divided among the children, except such part as the last dying spouse had disposed of as she "deemed fit".

The clause in paragraph X to the effect that the survivor of either of the parties executing the will might dispose of "any part of our community property" meant, of course, any part of our respective community property, and invest the proceeds, etc. This is true because the will in its inception states the purpose of each testator was to make disposition of his or her respective property; that is, if Mr. Heller died first, then his wife, having inherited a life interest in his respective property, had, notwithstanding the fact that she had only a life interest in it, the right, nevertheless, to sell and invest the proceeds in such manner as she might think best.

The later clauses of the will in paragraphs IX and X each in general terms refer to "remaining property" and "our community property", and must, under the rules which we have referred to at the beginning of our opinion, be construed in the light of the dominant purpose of the will, which was to make a respective disposition of the property, and not a joint disposition of it, and must be deemed to affirm, and not contradict, the initial clause, which clearly expressed this dominant intention of the parties.

If we say that under the provisions of paragraph IX the purpose was that the spouse first deceased was attempting to dispose of the community property of the survivor, then it would be to give dominance to this paragraph and override the express provisions of paragraphs III and VI, by the terms of which the surviving spouse is permitted to dispose of his or her share of the community property, as he or she "may deem fit." It is, therefore, apparent, under the rules to which we have referred, that we must treat paragraph IX as still being a disposition by each testator of his own share of the community property,— that is, his "respective property". Under the terms of the will, when the last testator came to die, if he or she had not married, the property which such testator had inherited from the first one who died, would necessarily go to the children under the provisions of paragraphs III and VI.

Under our construction of the will, as a whole, Mrs. Heller had the right to sell off any of her part of the community estate for any consideration satisfactory to her.

There was no partition of the community estate of the two testators. Therefore, Mrs. Heller and her children were cotenants, after the death of T. Heller, of the property. As a tenant in common, Mrs. Heller had the right to sell off any particular part of the entire community estate, just so long as her deed did not injure the rights of the other children to secure their part of the estate.

The deed of a tenant in common to a specific parcel of the land held by him with others is not absolutely void. It is always good as against the grantor. March v. Huyter, 50 Tex., 251. Such a deed does not convey or destroy any of the title of the other cotenants in and to the land described therein. Yet, while a co-tenant has no power to divest the title of the other owner by selling a specific part of the common property, it is well established that a court of equity will protect such a purchaser, if it can be done without injury to the other owner, by setting apart to the vendee of the grantor the particular tract bought. Furrh v. Winston, 66 Texas, 522, 1 S. W., 527.

It conveys all of the rights and interests of the grantor therein. Maverick v. Burney, 88 Texas, 560, 32 S. W., 512. Such a deed is voidable only by the co-tenants of the grantor and not by them unless it appears that it may injure their rights in the total property. It creates in the grantee a *prima facie* equitable title to the whole tract which can be overcome only when it appears that the rights of the other co-tenants have been injured by the sale of the particular part of the common property.

From the facts certified, the execution of the deed in question was without prejudice to the rights of the other parties and passed

the title to the tract in suit.  ′

We think the first question certified should be answered in the affirmative. Since that is true, we think such answer will settle the case and that it is therefore unnecessary to answer the other questions certified. Consequently, we make no recommendations as to the other questions.

We recommend that the first question certified be answered in the affirmative.

The opinion of the Commission of Appeals, answering certified questions, is adopted and ordered certified to the Court of Civil Appeals.

*C. M. Cureton*, Chief Justice.