### ROBINSON et al. v. O'CONNOR et al.
### No. 4352.

Court of Civil Appeals of Texas. El Paso.

Jan. 6, 1944.

Rehearings Denied March 9 and 23, 1944.

Paul W. Jeffrey and P. Harvey, both of Houston, and K. D. Hall, of Refugio, for appellants.

Crain, Vandenberge & Stofer, of Victoria, and Rex G. Baker, R. E. Seagler, and J. E. Price, all of Houston, for appellees.

McGILL, Justice.

This is an appeal from a judgment of the District Court of Refugio County rendered in an action in trespass to try title. The land involved originally was 622 acres, the east one-half of the east one-half of the Thomas H. Webb Survey, in Refugio County. On the trial the plaintiffs abandoned all claim to the south one-half of the 622-acre tract, and the north one-half thereof, 311 acres only, is involved in this appeal.

Patent to the Thomas H. Webb Survey covering 2489 acres of land in Refugio County was issued December 23, 1874, and

title thereto vested in the heirs of Henderson Yoakum, the assignee of the headright certificate by virtue of which the land was located by Miller and Dowell in 1873. The heirs of Henderson Yoakum were Eliza Campbell, a daughter, Robert and Houston Yoakum, sons, and Eula B., Edwin H., and Henderson Y. Robinson, minor children of Mary Yoakum Robinson, a deceased daughter, who married W. T. Robinson.

Appellants, Eula B. McCarty (formerly Eula B. Robinson) and others, instituted this suit claiming title as heirs of Henderson Yoakum through his deceased daughter Mary. Appellees claim title through the other heirs above named.

At the close of the evidence, on motion of defendants, the trial court peremptorily instructed a verdict for defendants and rendered judgment accordingly.

By their first eleven points appellants contend that the undisputed facts show a record title to the 311-acre tract in them.

The facts relating to the record title are undisputed. No question is raised as to the pleading, and there is no question of heirship. On issuance of the patent above referred to, legal title to an undivided one-fourth interest in the 2489 acres vested in each of the above named surviving children of Henderson Yoakum, and an undivided one-fourth interest therein vested in the three children of his deceased daughter Mary, hereinafter referred to as the "Robinson heirs."

On December 5, 1874, Eliza Campbell, Robert Yoakum and Houston Yoakum executed an instrument in which W. T. Robinson, individually and as guardian of the Robinson heirs, was also named as a grantor. The instrument recites:

"In accordance with our contract for the location of certain lands therein named with W. A. H. Miller and John Dowell, of the County of Travis and State of Texas, and for the further consideration of said Miller and Dowell having under said contract located and patented for us (here follows a description of the Thomas H. Webb survey), the said Miller and Dowell interest in said survey of land being one-half, and we having this day divided the same, have this day and do by these presents, bargain, sell, alienate, deliver and convey unto the said Miller and Dowell the following one-half interest of said tract as their locative interest (then follows a description by metes and bounds of the west one-half of the Webb survey)."

On June 26, 1876, Robert Yoakum executed a deed to J. P. Warfield, which recites:

"* * * I, R. Yoakum, * * * do sell, transfer and convey and hereby release and relinquish unto the said Warfield, his heirs and assigns, all my right, title and interest in and to the following land, to-wit: Three Hundred and Eleven (311) acres of land out of the S.E. corner of the S.½ of a 2489 acre survey in the County of Refugio in the name of Thomas H. Webb. And the said 311 acres is to come out of the S.E. corner of the S.½ of said 2489 acre survey and to be in a square form, it being R. Yoakum's entire interest in and to the said 2489 acres of land."

On February 22, 1877, the heirs of Henderson Yoakum, other than the Robinson heirs, executed a bond for title to T. L. Miller, in which they recited that they were the owners of an undivided interest of 622 acres of land in Refugio County out of the Webb headright, and were unable to make good title because the headright had not been divided and partitioned between the heirs of Henderson Yoakum, "who now own 933 acres of said headright."

On May 10, 1877, all of the Henderson Yoakum heirs, other than the Robinson heirs, and W. T. Robinson, as guardian of the Robinson heirs, signed a partition deed in which it was recited that Miller and Dowell had claimed half of the Webb survey for relocating, and by agreement of some of the heirs the west half was given to Miller and Dowell and the east half "conveyed to and retained by the heirs of Henderson Yoakum." This instrument then proceeds to partition the east half of the Webb survey, the west one-half thereof (622 acres) to Houston Yoakum and Eliza Campbell, 311 acres out of the southeast corner thereof to the Robinson heirs, and 311 acres out of the northeast corner thereof to Robert Yoakum. On the same day the three Yoakum heirs and W. T. Robinson, as guardian of the Robinson heirs, executed a deed conveying the 622-acre tract to T. L. Miller.

A deed acknowledged by J. P. Warfield on October 14, 1906, recites a conveyance to Mrs. Mary V. O'Connor and others of —

"All that certain tract or parcel of land situated in Refugio County, Texas (describing the Thomas H. Webb survey), the portion herein conveyed being the 311 acres conveyed to Robert Yoakum in deed of partition between the heirs of Henderson Yoakum, deceased, dated May 10, 1877, recorded in Book L, on pages 402 to 406 of the Deed Records of Refugio County, Texas, and being the same tract of land conveyed to me by said Robert Yoakum by deed dated June 27, 1876, and recorded in Book L, on pages 13 to 15 of the Deed Records of Refugio County, Texas. Reference is hereby made to said patent and said deeds for a more particular description of said land."

The 311-acre tract awarded to the Robinson heirs was sold by W. T. Robinson, their guardian, under orders of the Probate Court of Walker County, to Thomas W. Markham, on June 23, 1880.

All of the above instruments were duly recorded at the approximate times of their execution.

Appellees claim record title to the 311-acre tract here involved by subsequent mesne conveyances from the grantees in the deed from Warfield to O'Connor and others, above referred to.

■ The record title hinges on the legal effect to be given the above instruments. We think it clear that the deed of June 27, 1876, conveyed Robert Yoakum's entire interest in the 2489-acre Webb survey to Warfield. The granting clause employs the words "all my right, title and interest in and to" the 311-acre tract. The recital following the description of the land conveyed is "it being R. Yoakum's entire interest in and to the said 2489 acres of land." Robert Yoakum owned an undivided interest in the Webb survey, which included the 311-acre tract. There is a latent ambiguity in the granting clause and the recital, since the undivided interest in the entire tract and in 311 acres thereof, cannot be the same in quantity. Notwithstanding the general rule that when there is an irreconcilable conflict between the granting, habendum and warranty clauses on the one side, and premises or recitals on the other, the premises or recitals must yield, we think the specific interest described in the recital controls over the unspecified interest of the granting clause, and that the deed conveyed the legal title to Robert Yoakum's undivided interest in the 2489-acre tract. Under the doctrine of equitable partition it also created in the grantee, Warfield, a prima facie equitable title to the 311-acre tract therein described. Heller v. Heller, 114 Tex. 401, 269 S.W. 771. The equitable title thus created was only a prima facie title. We think the record in this case refutes it.

■ Within a year from the date of this deed the Yoakum heirs, other than the Robinson heirs, and W. T. Robinson, as guardian of the Robinson heirs, attempted to partition the east one-half of the Webb survey, and allotted to Robert Yoakum 311 acres out of the northeast corner thereof. They also allotted to Eliza Campbell and Houston Yoakum the west one-half thereof, and on the same day conveyed this west one-half, consisting of 622 acres, to T. L. Miller. The description of the 622-acre tract in these instruments conflicted with the description of the 311-acre tract in the Yoakum-Warfield deed, and the instruments were therefore a repudiation by the grantors of Warfield's prima facie equitable title therein. The description in the deed of June 23, 1880, by which W. T. Robinson, as guardian, conveyed the 311-acre tract awarded to the Robinson heirs in the partition of May 10, 1877, also conflicted with the description in the Yoakum-Warfield deed. By long acquiescence we think the Robinson heirs have ratified this deed and the attempted partition which preceded it.

The record of these instruments constituted a cloud upon Warfield's prima facie equitable title, yet this record reflects no attempt by Warfield to remove such cloud or in any manner repudiate such instruments. On the contrary, his deed to O'Connor and others expressly recognizes the partition by identifying the land therein conveyed as the 311-acre tract "conveyed to Robert Yoakum" in the partition deed, "it being the same tract of land conveyed to me by said Robert Yoakum." Such description is not in conflict with the legal title to Robert Yoakum's undivided interest in the 2489-acre tract conveyed by the Yoakum-Warfield deed, but is in conflict with Warfield's prima facie equitable title to the 311-acre tract thereby created. Warfield's deed to O'Connor and others constitutes a repudiation by him of such prima facie equitable title, and an assertion by him of his legal title to R. Yoakum's undivided interest in the 2489-acre tract.

Also, appellants, including Eula Mc-Carty, one of the Robinson heirs, in their brief assert that the Robinson Guardian-Markham deed conveyed an undivided one-fourth interest of the Robinson heirs, amounting to 54.4 acres of the 217.6 acres which they claim is in conflict with the descriptions in the Yoakum-Warfield and Robinson Guardian-Markham deeds. They thereby repudiate Warfield's prima facie equitable title to the 311-acre tract.

■ The doctrine of equitable partition does not go so far as to require the grantee of a tenant in common and his non-joining co-tenants to respect the prima facie equitable title created by the deed, although all parties desire to ignore such equitable title and partition the entire tract owned by all the co-tenants in conformity with the legal title conveyed. We think the instruments referred to conclusively indicate that this is what all parties interested in the east one-half of the Webb survey did.

■■ The instrument of May 10, 1877, was ineffective to partition the east one-half of the Webb survey. J. P. Warfield and the Robinson heirs, owners of undivided interests therein, were not parties thereto. The signature of W. T. Robinson, as guardian, with or without a court order, being insufficient to bind the Robinson heirs. It does not follow that such instrument is without evidentiary value. A partition of land is a partition of possession and not of title. It does not confer title upon either of the joint owners, but merely dissolves tenancy and segregates the possession and use. Chace v. Gregg, 88 Tex. 552, 32 S.W. 520; Houston Oil Co. of Texas v. Kirkindall, 136 Tex. 103, 145 S.W.2d 1074.

■ Not being a conveyance of land, the transaction is not within the purview of the statutes of fraud, and may be effected by parol. 32 Tex.Jur. p. 151, Sec. 6.

■ A voluntary agreement of partition by joint owners of land when of ancient date may be shown by circumstances and inferences from the acts of the parties and their acquiescence in such acts. Easterling v. Simmons, Tex.Civ.App., 293 S.W. 690, writ refused.

■ We think that the instrument in question, the subsequent deeds by Warfield and the Yoakum heirs of the respective tracts thereby allotted to them, and the guardian's deed of the interest allotted to the Robinson heirs, absent any objection for more than half a century, is conclusive evidence that the partition reflected by such instrument was acknowledged, acquiesced in, ratified and accepted by all parties having an interest in the land involved and is binding on them. Pena v. Frost Nat. Bank, Tex.Civ.App., 119 S.W.2d 612, writ refused.

It is unnecessary to determine whether the instrument of December 5, 1874, was void and ineffective to reduce the interest of the Robinson heirs in the Webb survey, and yet valid and effective to divest the Henderson Yoakum heirs, other than the Robinson heirs, of a portion of their interest therein sufficient to make up the agreed one-half locative interest of Miller and Dowell, as appellants seem to contend. Whatever interest the Robinson heirs had in the east one-half of the survey was effectually disposed of by the above partition.

It is also unnecessary to discuss appellants' points dealing with appellees' claim of title by adverse possession, since appellants failed to establish their record title to the land involved.

The judgment is affirmed.

## On Motion for Rehearing.

PRICE, Chief Justice.

■ Appellants in their motion for rehearing request that it be made clear that, while W. W. Robinson was named as one of the grantors in the deed of December 5, 1874, purporting to partition to Dowell and Miller the west one half of the 2489-acre tract in question, Robinson, neither in his capacity as guardian, nor as an individual, signed same. It was not so stated in the original opinion, and we hardly think it may be reasonably implied therefrom that he did so sign same. He did not sign said deed either as guardian or individually.

This deed was introduced by appellants without restrictions. It established by its recitals, we think, that prior to the execution of that deed, Dowell and Miller had an undivided one-half interest in the entire acreage—it is true, an equitable estate only; further, that it was acquired by the performance of services in connection with acquiring the legal title to the entire acreage for the Yoakum heirs. The certificate

by virtue of which the land was acquired was not land, it was not an interest in land; it is a mere right to acquire land by complying with the applicable law.

Neither Robinson, the guardian, nor his wards were bound by the location of this certificate. The Robinson heirs jointly owned an undivided one-fourth interest therein; they acquired legal title by ratification and acceptance of the location of the certificate for their benefit.

 It is conceded that the aforesaid deed of December 5, 1874, localized the title of Dowell and Miller in the western half. But appellants contend that their undivided interest in the entire tract of 2489 acres was unaffected thereby save that it was located in the eastern half of the tract; further, the acreage being of uniform value, they were entitled to 622 acres out of the undivided eastern half of the tract. In short, their co-tenants should bear the entire burden of acquiring legal title to the property. This is clear: In the event the deed localized the interest of Dowell and Miller in the west half of the tract, it localized the interest of appellees and appellants in the east half. This deed was a partition deed and shows on its face that it was such.

The case of House v. Brent, 69 Tex. 27, 7 S.W. 65, is cited in support of the position that appellants, while benefited by and ratifying the acts of the locators, should not bear their portion of the burdens incident to acquiring the title. In that case the deed to the locator containing the recitals as to the contract was excluded from evidence. The evidence did not establish a contract by the locator with any of the joint owners of the certificate for an interest in the land obtained. Here, this is not the case. The deed reciting the contract was introduced in evidence by appellants—introduced as a whole without limitation. It was in a way a necessary link in the chain of title. Thereby it was sought to show that the interests of appellees' predecessors in title in the 2489 acres had been satisfied in full. It is true that the patent invested these minors with the legal title to an undivided one fourth of the 2489 acres, provided, of course, they acquiesced in the location of the certificate on this land. In obtaining this title, the equitable title to an undivided 1244.5 acres had been used. Appellants assert they should take their title free from the burden entailed in acquiring same. It is not believed that such a holding is required by either law or equity. Appellants cannot assert the validity of the deed to divest appellees' title, and in the same breath repudiate same as affecting theirs. The difference between this case and the case of House v. Brent, supra, lies in the fact that here the contract that the locator was to have an undivided one-half interest was proven; there, the proof in this respect failed.

 It is said that the partition deed joined in by the guardian is void. By this deed a specific 311 acres was set aside for the minors and localizing their interest in the east one half of the 2489-acre tract. This assertion, in a sense, is true. However, appellants and appellees agree this acreage was of equal and uniform value. In our opinion 311 acres was the proportion to which appellants were entitled. Their guardian made a valid sale of this 311 acres. It is to be presumed on such sale the value thereof was realized. So far as this record shows, the validity of such sale has never been questioned. Land theretofore purported to be conveyed to Warfield by Robert Yoakum was included in the deed. Warfield thereafter accepted 311 acres in the northeast corner of the tract as a satisfaction of his equity under his prior deed from Robert Yoakum.

Many of these transactions took place over sixty years ago, none of them less than thirty-five. Appellees have used and occupied the lands involved, paying the taxes thereon. Appellants, by their own failure to question same, are presumed as a matter of law to have acquiesced in the partitions evidenced by the record herein. Same became binding on appellants not by their own force, but by the action and nonaction of appellants with reference thereto.

It is ordered that the motion be in all things overruled.