CONCURRING[1] AND DISSENTING OPINION
SUE WALKER, Justice,
Concurring and Dissenting
I. Introduction
This is an appeal from the trial’ court’s summary judgment construing the will of the decedent, Glenda Rhoades. Because the Majority Opinion fails to properly apply the rules of will construction to Rhoades’s will and construes Rhoades’s will contrary to her expressed intent, I dissent.
II. Background
Rhoades signed a will in which she devised all of her interest in her residential homestead, all of her personal property, and all of the rest of her estate ’to her father Glen; however, if her father predeceased her—as is the case here—she provided that “his portion” was to be distributed to Appellee Elise Kinler for the benefit of Kinler and Kinler’s son. Rhoades then provided that any other property that had not been disposed of under any other provision of her will should be distributed to her heirs-at-law, who are Appellants Norma Anderson, Paula Gilleland, Gerald Don Marrs, Joann Dycus, and Vicki George.
Rhoades’s will provided for an independent administration and named Kinler as the independent executor. After Rhoades’s death, Kinler filed an application to probate Rhoades’s will. Appellants filed a petition for declaratory judgment, seeking a declaration that Rhoades’s estate passed to Appellants under the “residuary clause” because the distributions to Rhoades’s father had. lapsed. Kinler likewise filed a declaratory-judgment petition, requesting a declaration that the entire estate passed to her based on the construction of the will as a whole. Kinler and Appellants filed competing motions for summary judgment, as well as responses. The trial court signed an order granting Kinler’s summary-judgment motion and denying Appellants’ summary-judgment motion. Appellants perfected this appeal and raise two issues: the trial court erred by granting Kinler’s motion for summary judgment and erred by denying Appellants’ motion for summary judgment.
III.The Trial Court Did Not Err by Granting Kinler’s Motion for Summary Judgment and by Denying Appellants’ Motion for Summary Judgment
A. Standard of Review
Absent ambiguity, the construction of a will is a matter of law.[2] Penland v. Agnich, 940 S.W.2d 324, 326 (Tex.App.-Dallas 1997, writ denied). Accordingly, we review *419 de novo the question of the construction of an unambiguous will. See Harris v. Hines, 137 S.W.3d 898, 904 (Tex.App.-Texarkana 2004, no pet.). In construing a will, our objective is to discern and effectuate the testatrix’s intent as reflected in the instrument as a whole, giving effect to all its parts. Hysaw v. Dawkins, 483 S.W.3d 1, 7 (Tex.2016); San Antonio Area Found. v. Lang, 35 S.W.3d 636, 639 (Tex.2000); Gee v. Read, 606 S.W.2d 677, 680 (Tex.1980). The intent must be drawn from the will, not the will from the intent. Hysaw, 483 S.W.3d at 7. Thus, we focus not on what the testatrix intended to write but on the meaning of the words she actually used. Id. Ascertaining a testatrix’s intent from the four corners of a will requires careful examination of the words used. Id. If possible, all parts of the will must be harmonized, and every sentence, clause, and word must be considered in ascertaining the testatrix’s intent. See Welch v. Straach, 531 S.W.2d 319, 322 (Tex.1975); Steger v. Muenster Drilling Co., 134 S.W,3d 359, 372 (Tex.App.-Fort Worth 2003, pet. denied). We presume that the testatrix placed nothing superfluous or meaningless in her will and that she intended every word to play a part in the disposition of her property. See Steger, 134 S.W.3d at 372; Cooley v. Williams, 31 S.W.3d 810, 812 (Tex.App.-Houston [1st Dist.] 2000, no pet.).
B.Rhoades’s Will
Article III and Article V of Rhoades’s will provide, in pertinent part, as follows.[3]
HI.
DISPOSITION OF ESTATE
A. I give all of my interest in the real property and the improvements thereto which constitute my residential homestead at the time -of my death to Glen Rhoades in equal shares.
B. I give, devise[,] and bequeath all of my personal property to Glen Rhoades in equal shares.
C. I give, devisef,] and bequeath all of the rest of my estate of whatsoever kind and wheresoever situated as follows to Glen Rhoades. In the event that Glen Rhoades should predecease me, his portion'shall be distributed to ELISE KINLER for the benefit of Elise and Michael Kinler. In the event that Elise Kinler should predecease me, then said portion shall be distributed to Michael Kinler.
D. Any other property of mine that has not been disposed of under any other provision of this Will shall go and be distributed to my heirs-at-law. Their identity and respective shares shall be determined in all respects as if my death had occurred immediately following the happening of the event requiring such distribution, and according to the laws of Texas then in force governing the distribution of the estate of an intestate.
[[Image here]]
Y.
CONTINGENT TRUSTS
[[Image here]]
TRUST FOR GLEN RHOADES: In the even[t] that GLEN RHOADES is, at the time of my death, a resident of a residential care home, nursing home, assisted living facility or similar facility, if and in that event I direct that his portion as described in Article III above shall be distributed to my Trustee, IN TRUST NEVERTHELESS, for the *420 uses and purposes hereinafter set forth. My Trustee shall not distribute such property outright, but instead my Trustee shall hold all of such property in separate trust for the supplemental needs of GLEN RHOADES as follows:
A. This trust shall be titled The Glen Rhoades Supplemental Needs Trust. I direct that the trustee shall provide for the supplemental needs of Glen Rhoades without interfering with or reducing the benefits Glen Rhoades would be entitled to receive from any state or federal agency and to maximize the benefits available to Glen Rhoades. I intend that the assets remaining in trust for Glen Rhoades be used to supplement other benefits that Glen Rhoades might be entitled to receive and explicitly not be used for Glen Rhoades’s basic support needs until the death of Glen Rhoades.
B. Upon the death of Glen Rhoades, the remainder, if any, shall be distributed to Elise Kinler. In the event that Elise Kinler has predecease[d] the final distribution, said remainder shall be distributed to Michael Kinler. [Emphasis added.]
C.The Parties’ Positions
1. Appellants’ Position
Appellants assert that because Kinler is not mentioned in Article III, Paragraphs A or B, the gifts to Glen identified in those paragraphs “lapsed.” Accordingly, Appellants argue that these lapsed gifts passed to them under the “residuary clause” set forth in Article III, Paragraph D. Appellants contend that “[t]he issue before this Court is to determine which paragraph— Article III C, or Article III D—is the true residuary clause in Decedent’s Will.” Appellants admittedly exclude Article V from their analysis of Rhoades’s will.[4]
2. Kinler’s Position
Kinler asserts that “this is not a complicated will dispute.” She argues that the will named one beneficiary, Rhoades’s father Glen, and named her as the first alternate or contingent beneficiary. According to Kinler, Glen was to receive all of Rhoades’s estate as his “bucket,” and then his “bucket” was to pass to Kinler if he predeceased Rhoades. Kinler points out that Article III, Paragraph C gifts to her Glen’s “portion” after identifying what constituted Glen’s portion in Paragraphs A, B, and C. She further contends that Article V specifically explains that Glen’s “portion” means his entire collective interest. Kinler argues that applying the rules of will construction and construing the will as a whole, she is entitled to all of Rhoades’s interest in the residential homestead (Paragraph A), all of Rhoades’s personal property (Paragraph B), and all of the rest of Rhoades’s estate (Paragraph C) because these gifts—which are Glen’s portion under Rhoades’s will—passed over to her as the first named contingent beneficiary of Glen’s portion if Glen predeceased Rhoades. Kinler contends that Article III, Paragraph D addresses disposition of Rhoades’s estate, including Glen’s portion, in the event the contingent beneficiaries named in the preceding paragraphs predeceased Rhoades; because she, Kinler, is a contingent beneficiary who did not prede *421 cease Rhoades, Kinler asserts Paragraph D was not triggered.
D. De Novo Construction of Rhoades’s Will Applying the Rules of Will Construction
1. The Will is Construed as a Whole to Effectuate the Testatrix’s Intent
The cardinal rule of will construction is that the entire will is examined to determine the testatrix’s intent. See Hysaw, 483 S.W.3d at 7 (“Today, we reaffirm our commitment to a holistic approach aimed at ascertaining intent from all words and all parts of the conveying instrument”); Heller v. Heller, 114 Tex. 401, 410, 269 S.W. 771, 774 (1925) (“[A]n elementary rule of construction with reference to wills is that the testator’s intention is to be collected from the whole of the will taken together, and not from detached portions.”); see also Lang, 35 S.W.3d at 639; Bergin v. Bergin, 159 Tex. 83, 89, 315 S.W.2d 943, 946-47 (1958); Disabled Am. Veterans v. Mullin, 773 S.W.2d 408, 410 (Tex.App.-San Antonio 1989, no writ); George W. Thompson, 2 Construction and Interpretation of Wills § 41 (1928) (describing “the first rule of construction” with respect to wills as ascertaining the intention of the testator from the four comers of the will).
An examination of Rhoades’s entire will shows her intent was (1) to leave her entire estate to her father Glen, either directly as set forth in Article. Ill or by means of a trust as set forth in Article V if Glen resided in a nursing home at the time of her death, and (2) to leave Glen’s portion of her estate, i.e., her entire estate as set forth in Article III, to Kinler if Glen predeceased her or to leave pursuant to Article V the entire balance remaining in Glen’s trust to Kinler upon Glen’s death. Thus, Rhoades’s desired testamentary-scheme, as ascertained from her entire will, was to name her father Glen as the primary beneficiary of her entire estate, to name Kinler the first alternate or contingent beneficiary, to name Kinler’s son as the second alternate or contingent beneficiary, and to provide that any undisposed-of property would be distributed to her heirs-at-law, i.e., according to the laws of intestacy.
The Majority Opinion does not examine Rhoades’s entire will, the four-corners of the will, to determine her intent or her testamentary scheme as a whole. Contrary to this cardinal rule of will construction, as urged by Appellants, the Majority Opinion views Article III in a vacuum without any effort to reconcile it with Rhoades’s intent as expressed in Article V—that “his [Glen’s] portion” of her estate includes all of the property identified in Article III: the real property and improvements constituting Rhoades’s residential homestead, Rhoades’s personal property, and all of the rest of Rhoades’s estate of whatsoever kind and wheresoever situated. But see Hysaw, 483 S.W.3d at 7 (requiring intent to be determined from examination of all parts of will); Lang, 35 S.W.3d at 639 (same); Bergin, 159 Tex. at 89, 315 S.W.2d at 946-47 (same); Heller, 114 Tex. at 410, 269 S.W. at 774 (same). To the extent Article III, Paragraph C standing alone could somehow possibly be construed as limiting Glen’s portion to only “the rest of [Rhoades’s] estate of whatsoever kind and wheresoever situated,”[5] that possible *422 stand-alone construction of Paragraph C cannot destroy Rhoades’s explicit expressed intention set forth in the remaining portion of her will (Article V) as to what constitutes Glen’s portion of her estate. See, e.g., Bergin, 159 Tex. at 89, 315 S.W.2d at 947 (“We have examined the will in the light of these cardinal rules and hold that the first paragraph of the will, which, standing alone would leave an absolute fee title to respondent, cannot destroy the effect of the remaining portions of the will, which plainly provide that respondent shall receive the benefits of the stock only until she remarries or dies.”). The Majority Opinion fails to give effect to Rhoades’s intent expressed in her will that her father Glen, as Ms portion of her estate, take all of the real property and improvements constituting her residential homestead, her personal property, and all of the rest of her estate of whatsoever kind and wheresoever situated either directly or via a trust if he resided in a nursing home at the time of her death and that if Glen predeceased her, Ms portion be given to Kinler,
2, Same Term Is to be Given Same Meaning
“When the testator uses the same words in different parts of the will with reference to the same subject matter, we presume he intended the words to have the sam.e meaning unless the context indicates the testator used the words in a different sense.” Eisen v. Capital One, Nat’l Ass’n, 232 S.W.3d 309, 313 (Tex.App.-Beaumont 2007, pet. denied); see also Weathers v. Robertson, 331 S.W.2d 87, 90 (Tex.Civ.App.-Beaumont 1959, writ ref'd n.r.e.) (stating that a term used in a will should be construed as having the same meaning throughout the will); 2 Construction and Interpretation of Wills § 78 (explaining that “words or phrases occurring more than once in a will, or the same words used in different parts of the same will, are presumptively used in the same sense and are to receive the same construction”).
The second sentence of Paragraph C of Article III provides, “In the event that Glen Rhoades should predecease me, Ms portion shall be distributed to ELISE KINLER for the benefit of Elise and Michael Kinler.” [Emphasis added.] Rhoades’s intent in using the term “his portion” in Paragraph C of Article III is clarified by her use of the exact same term in Article V. The term “his portion” as used in Article V straightforwardly encompasses as Glen’s portion of Rhoades’s estate, all of Rhoades’s “interest in the real property and the improvements thereto which constitute my residential homestead[,]” “all of [Rhoades’s] personal property,]” and “all of the rest of [Rhoades’s] estate of whatsoever kind and wheresoever situated.” The term “his portion” in Paragraph C of Article III should be given the same meaning that same term has by éx-press definition in Article V. See Eisen, 232 S.W.3d at 314 (construing the term “beneficiary” in both Article VI and Article IX of testator’s will to have the sanie definition pursuant to the definition testator provided for the term' in Article VI).
The Majority Opinion, however, wholly ignores Article V and fails to apply the rule of will construction that the same term used in the same will should be given the same meaning. Consequently, under *423 the Majority Opinion’s holding, the term “his portion” has two completely different meanings in the will:
• In Article III: per the Majority Opinion’s holding, “his portion” consists solely of the property described in Paragraph C in Article III (i.e., a parcel of non-homestead real property).
• In Article V (ignored by the Majority Opinion): per the express language of the will, “his portion” consists of all property devised to Glen as described in Article III (i.e., all of Rhoades’s interest in the real property and improvements thereto constituting her residential homestead, all of her personal. property, and all of the rest of her estate- of whatsoever kind and wheresoever situated).
But see id. (holding that when- testator uses same words in different parts of same will, words presumed to have same meaning); Weathers, 331 S.W.2d at 90 (stating that term used in will should be construed as having same meaning throughout will).
3. A Will’s Internal Formatting Cannot Thwart the Testatrix’s Intent
“[A] will is not to be read so as to contradict itself if its apparent contradictions can be reconciled by bringing the various clauses together and deducing a consistent interpretation from the whole context.” Jones’ Unknown Heirs v. DorChester, 224 S.W. 596, 601 (Tex.Civ.App.-Amarillo 1920, writ dism’d w.o.j.); see also Hysaw, 483 S.W.3d at 13 (explaining that “apparent inconsistencies or contradictions must be harmonized, to the extent possible, by construing the instrument as a whole”). Appellants’ position, adopted by the Majority Opinion, stems primarily, if not exclusively, from the labeling of the paragraphs in Article III of Rhoades’s will as Paragraphs A, B, C, and D. That is, Appellants’ position is not based on the actual words of Rhoades’s will but on the internal Paragraph A, B, C, and D formatting of Rhoades’s will. Based on the will’s internal formatting’s use of the letters A, B, C, and D, Appellants treat-each of these paragraphs as separate stand-alone provisions.[6] But reading the actual words of these four paragraphs together, it is -clear that Rhoades intended to name -her father Glen as the will’s beneficiary and to name Kinler as the first alternate or contingent beneficiary. Simply removing the internal A, B, C, and D paragraph formatting makes this obvious:
I give all of my interest in the real property and the improvements thereto which constitute my residential homestead at the time of my death to Glen Rhoades in equal shares. I give, devise[,] and bequeath all of my personal property to Glen Rhoades in equal shares. I give, devise[,] and bequeath all of the rest of my estate of whatsoever kind and wheresoever situated as follows to Glen Rhoades. In the event that Glen Rhoades should predecease me, his portion shall be distributed to ELISE KINLER for the benefit of Elise and Michael Kinler. In the event that Elise Kinler should predecease me, then said portion shall be distributed to Michael Kinler. Any other property of .mine that has not been disposed of under any other provision of this Will shall go and be distributed to my heirs-at-law. Their *424 identity and respective shares shall be determined in all respects as if my death had occurred immediately following the happening of the event requiring such distribution, and according to the laws of Texas then in force governing the distribution of the estate of an intestate. [Emphasis added.]
See Welch, 531 S.W.2d at 322 (“[I]t is always permissible, in fact proper, to look beyond mere grammatical form to what may be termed the internal evidence of the writer’s intention.”); cf. Dorchester, 224 S.W. at 602 (construing seventh paragraph of will by looking to eighth and ninth paragraphs of will). By adopting Appellants’ contention that Paragraphs A, B, C, and D of Article III are standalone provisions that cannot be read in connection with one another, the Majority Opinion improperly elevates grammatical form over testamentary-scheme substance. See McMurray v. Stanley, 69 Tex. 227, 230, 6 S.W. 412, 413 (1887) (“In construing the will, all its provisions should be looked to, for the purpose of ascertaining what the real intention of the testatrix was; and ... any particular paragraph of the will which, considered alone, would indicate a contrary intent, must yield to the intention manifested by the whole instrument.”).
4. Contingent Beneficiaries Take Over Residuary Beneficiaries
Article III of Rhoades’s will sets forth a list of contingent beneficiaries—Elise Kin-ler first and then Michael Kinler—who would take Glen’s portion of her estate in the event Glen predeceased her. Notably, Rhoades utilized the same disposition for the remainder of the trust in Article V. Because Rhoades listed contingent beneficiaries for Glen’s portion of the estate and because the named contingent beneficiaries did not predecease Rhoades, there are no failed or lapsed gifts; thus, contrary to Appellants’ position, the Anti-Lapse Statute does not apply. See Rossi v. Rossi, 448 S.W.2d 162, 164 (Tex.Civ.App.-Houston [14th Dist.] 1969, writ ref'd n.r.e.) (“The [Anti-Lapse Statute] is simply inapplicable where there is a valid testamentary disposition, as a gift over and a legatee or devisee has predeceased the testator.”). And this construction of Article III as containing no failed or lapsed gifts does not render Paragraph D meaningless, as the Majority Opinion states in a footnote. Paragraph D has a purpose: it acts as the residuary clause and provides for the disposition of the estate if the named contingent beneficiaries predeceased Rhoades. Based on the facts here, Paragraph D was not triggered because at least one of the named contingent beneficiaries—Kinler— was alive at the time of Rhoades’s death. Simply because a provision is not triggered does not render it “meaningless.” Cf. In re M.M.M., 428 S.W.3d 389, 396 (Tex.App.-Houston [14th Dist.] 2014, pet. denied) (holding statutory provision was not meaningless because it might rarely come into play; as long as there was any event that would trigger the need for the provision, it was not meaningless).
The mere fact that Article III, Paragraph D sets forth a residuary clause in favor of Appellants, Rhoades’s heirs-at-law, does not detract from Rhoades’s designation of contingent beneficiaries. See, e.g., Calloway v. Estate of Gasser, 558 S.W.2d 571, 576 (Tex.Civ.App.-Tyler 1977, writ ref'd n.r.e.) (holding that when testator designated husband as primary beneficiary and others as contingent beneficiaries in event husband predeceased her and couple then divorced, contingent beneficiaries were entitled to take rather than residuary beneficiaries—even though husband was not dead but instead was only statutorily prohibited from taking—because by providing contingent beneficiaries, will reflected testator’s intent that *425 they take over residuary beneficiaries). Nor can a residuary clause require or place “a construction on a previous clause in order to create a residue” as Appellants and the Majority Opinion do here. See 2 Construction and Interpretation of Wills § 90. Appellants and the Majority Opinion construe the provisions of Article III in order to create the existence of a residuary clause under Paragraph D, claiming otherwise Paragraph D would be superfluous, instead of looking to Rhoades’s intent that Kinler as a contingent beneficiary takes Glen’s portion, regardless of whether that taking left anything for the residuary beneficiaries. See Calloway, 558 S.W.2d at 576.
IV. Conclusion
Because, as set forth above, applying the well-settled rules of will construction to Rhoades’s will, Kinler established as a matter of law that in the event that Glen predeceased Rhoades, Rhoades intended for Kinler to receive “his portion”—which consisted of the real property and improvements thereon comprising Rhoades’s residential homestead, Rhoades’s personal property, and any other property owned by Rhoades at her death—I would hold that the trial court did not err by granting Kinler’s motion for summary judgment on her request for a declaration that Rhoades’s entire estate passed to her, and I would overrule Appellants’ first issue. Similarly, I would hold that the trial court did not err by denying Appellants’ cross-motion for summary judgment; I would overrule Appellants’ second issue. Accordingly, I would affirm the trial court’s order granting the summary-judgment motion filed by Kinler and denying the cross-motion for summary judgment filed by Appellants. Because the Majority Opinion holds otherwise, I respectfully dissent.
APPENDIX A
*426 [[Image here]]
*427 [[Image here]]
*428 [[Image here]]
*429 [[Image here]]
*430 [[Image here]]
*431 [[Image here]]
*432 [[Image here]]
*433 [[Image here]]

. I concur with the Majority Opinion’s disposition of Appellants’ jurisdictional issue.

. Kinler and Appellants agree that Rhoades’s will is unambiguous.

. Rhoades’s entire will is attached hereto as Appendix A.

. Appellants further argue:
There is no language in Article V (or elsewhere in the Will) which directs this Court to use tire clarity of Article V to help bolster [Kinler’s] alleged entitlement under Article III.... Because Glen Rhoades predeceased the Decedent, the only provision of the Will which determines the disposition of Decedent’s estate is Article III. [Kinler’s] pleas to the trial court to treat Article III as if it contained the words found in Article V should have been ignored.

.- I do not believe such a construction is possible in any event. To construe the phrase “his portion” in Article III as relating solely to the property described in Paragraph C, the Majority Opinion essentially redrafts Paragraph C to provide a limitation Rhoades omitted from her will The construction propounded by the Majority Opinion rewrites Paragraph C to add the italicized language: "I give, devise and bequeath all of the rest of my estate of *422 whatsoever kind and wheresoever situated as follows to Glen Rhoades. In the event that Glen Rhoades should predecease me, his portion [as described solely in the preceding sentence] shall be distributed to ELISE KINLER for the benefit of Elise and Michael Kinler." [Emphasis added.] See Lang, 35 S.W.3d at 639 (stating that courts must not redraft wills to vary or add provisions "under the guise of construction of the language of the will" to reach a presumed intent).

. Appellants assert the following:
Kinler is mentioned only in Section C. Only Glen Rhoades is mentioned in Sections A and B, and' he failed to survive the Decedent. Unambiguously, Decedent failed to include language in either Section A or Section B which would cause those lapsed bequests to pass to Kinler. Instead, Decedent left a very unambiguous residuary bequest in Section D that left all of the “lapsed” gifts to the Heirs-at-Law.