Victoria B. WEATHERS et al., Appellants,

v.

Catherine ROBERTSON, Appellee.

No. 6250.

Court of Civil Appeals of Texas.

Beaumont.

Dec. 3, 1959.

Rehearing Denied Jan. 20, 1960.

88

Howard P. Castle, J. R. McDougald, Beaumont, for appellants.

Benckenstein & Benckenstein, Beaumont, for appellee.

McNEILL, Justice.

Action to construe will.

This suit was instituted in a district court of Jefferson County, Texas, by Aubrey J. Brown, Lilian H. Clark, Victoria Brown Weathers, et vir, and Gordon V. Brown, appellants, against Catherine Robertson, appellee, and others and involved the title to the west one acre of a certain 2½ acre tract in said county hereinafter described. Before trial, appellants and the defendants, other than appellee, settled their controversy which involved .585 acre, the cause was severed and judgment rendered disposing of those parties and said portion of the acre.

■ The title to the land at issue depends upon the correct construction of the holographic will of Daisy E. Brown who was a sister of appellants. Appellants claim that the title to the acre, subject to a life estate in Nellie G. Robertson, vested in them under the residuary clause in the will, or alternatively as heirs at law of the testatrix. Appellee who has succeeded to the title given to Miss Robertson under the will claims the acre in fee simple. The will is made up of seven handwritten pages containing numerous unnumbered paragraphs of bequests and instructions, but the immediately pertinent paragraphs are:

(p. 2): "The 2½ acres, French Subdivision A. Williams Survey, Jefferson County, Texas, (my homestead) I wish divided as follows;

"The west one acre & house I give to my friend Nellie G. Robertson for a home as long as she lives, should she not care to use it as a home or live on above property, she can do with it as she wishes but I would like for her to continue living there.

"The east 1½ acres with small house & outhouses I leave to my sister Victoria

Brown Weathers and her husband Wm. Amick Weathers."

(p. 6): "I want my friend Nellie G. Robertson to be given money not to exceed seven hundred fifty dollars ($750.00) to be used to re-roof & re-decorate my home which I leave to her, money to be used for this purpose only.

(P. 6 immediately following above quotation):

"The balance of any money left in my estate is to be divided equally between my brothers and sisters, as follows:

"Norman M. Brown, Beaumont, Texas
"Aubrey J. Brown, Houston, Texas
"Lilian H. Clark, Hallettsville, Texas
"Victoria Brown Weathers, Pt. Arthur, Texas
"Gordon V. Brown, Beaumont, Texas."

(Norman M. Brown is dead but the other brothers and sisters named are his heirs at law).

While Daisy E. Brown was not a lawyer, she had some familiarity with legal terms. The parties in their briefs, in effect, agree she was a woman of good education and could express herself quite clearly, did not waste any words and drafted her will with care.

To read the intention of the testatrix as expressed by her within the four corners of the will we think it appropriate to mention certain helpful rules of construction relating to the use of words in wills.

In White v. Taylor, 155 Tex. 392, 286 S.W.2d 925, at page 926, the court adopted the rule for the construction of words from 2 Schouler on Wills (6th Ed.) p. 984 in this language: "Words in general, whether technical or popular are to be taken in their plain and usual sense, unless a clear intention to use them in another sense can be collected and that sense ascertained besides. All other things being equal the natural and literal import of words and phrases is presumed to have been intended; and each word is to have its effect, if the general in-

tent be not thwarted thereby * * *." And this rule applies whether the will was artfully written or not. 44 Tex.Jur. 720. It is proper here also to mention the rule that a testator " * * * is presumed to have been familiar with the ordinary and natural meaning of the words used in his will." Heinatz v. Allen, 147 Tex. 512, 217 S.W.2d 994, 997.

Having in mind these rules, let us return to the first quoted provision (p. 2 of will) in which she states "the 2½ acres (my homestead) I wish divided as follows:" The plain and usual meaning of "to divide" is "to separate into parts, split up; sever." Webster's New World Dictionary. The thought in the testatrix's mind therefore, we conclude, is that she was separating or splitting up the 2½ acres. She was dividing it between her friend, Nellie G. Robertson, of the one part, her sister and her sister's husband of the other part. When the testatrix divided the tract of land she named no remainderman for the interest in the west one acre; she mentioned nobody to take title to the property after Miss Robertson's death and having drafted her will with care she could not well have overlooked this point had she intended a separation of the title between life tenant and remainderman. Had she overlooked it, then, she had the question called to her attention again for just before the concluding part of her will, she provided that the "home" be re-roofed and redecorated by her friend Nellie Robertson out of funds of testatrix's estate. If she had intended a remainder interest the west one acre was again before her but she failed to mention it.

The next sentence in the first above quotation reads as follows: "The west one acre & house I give to my friend Nellie G. Robertson for a home as long as she lives, should she not care to use it as a home or live on the above property, she can do with it as she wishes but I would like for her to continue living there." From this it is apparent that Nellie G. Robertson was already living in this home and by reading the latter part of the will, which is the second

quotation with reference to the $750.00 for re-roofing it is certain that the testatrix also was living there as she called this place "my home". Having in mind the fact that both testatrix and Miss Robertson were living on this west acre at the time, we see in the use of the second sentence just quoted the concern of the testatrix that her friend, Nellie Robertson, have this home as a home as long as she lived and she wanted her to continue living there. But the fact testatrix desired that she continue to live there, while of concern to testatrix, was not her sole concern. She provided if Nellie Robertson did not care to live on the property "she can do with it as she wishes." This is broad language, and its impact must be considered along with that of other clauses to arrive at the overall true intent of testatrix. And although the language of the isolated clause giving the west acre and house to "Nellie G. Robertson for a home as long as she lives" as asserted by appellants, points to a life estate, Johnson v. Goldstein, Tex.Com.App., 215 S.W. 840, we would not be justified in giving this clause controlling importance to do which would force unusual meaning to other plain clauses of the will in violation of the above rules of construction.

■ Appellants argue since testatrix used the word "give" in the above quoted portion in describing the one acre and house given to her friend Nellie Robertson and used the word "leave" in connection with the gift of the other one and one-half acres to her sister and brother-in-law that she was drawing a distinction between the title granted Miss Robertson and the one granted her sister and brother-in-law. We cannot sustain this view. Later in her will (p. 6, 1st quotation) she used the word "leave" in connection with the gift of the home to Miss Robertson in the clause "my home which I leave to her." The same word used more than once in a will is usually construed to have the same meaning in each place. 44 Tex.Jur. 478, § 183. Besides other clauses of the will pertaining to various gifts of personal property and cash

bequests show that she used the word "give" and "leave" interchangeably just as she had mentioned in her will that she wanted a sum of money up to $750 used to repair the home which she left Nellie G. Robertson. Appellants also argue that the clause leaving Miss Robertson up to $750 to re-roof and redecorate the home indicates testatrix's intent to give only a life estate to the former. While it is true this would fit in with the gift as a life estate it is wholly consistent with the gift in fee. Whether for life or in fee testatrix did not want the gift recipient to be given property that needed early repairs.

■ Again appellants contend that by the use of the language "The balance of any money left in my estate" found in the residuary clause, testatrix intended to embrace any and all other property, including the remainder in the west acre. There are two reasons why we cannot uphold this contention. First, by giving the usual ordinary meaning, which the above quoted rule from Schouler on Wills requires us to do, to the word "money" we cannot hold upon the record before us that it includes a remainder interest in real estate. 96 C.J.S. Wills § 759, pp. 162, 163. The second reason is that immediately preceding the residuary clause she specifically provided for several substantial cash bequests, totaling $3,710. We think, therefore, it naturally followed that in the use of the phrase "The balance of any money left in my estate" she was concluding the disposition of the balance of any money, as such, that may be left in her estate.

■ The holding of the court below that the will gave the fee in the west acre to Miss Robertson was made upon motions for summary judgment by both sides. Appellants' motion attached the will of testatrix, the order probating it and the inventory of the estate, together with other documents not necessary to enumerate. The trial court after having heard the motions overruled appellants' and granted appellee's. His consideration of the case no

doubt included the records made a part of the motions. The will was dated May 21, 1945 and she died August 16, 1947. In our study of the case we think we are justified, in view of the lapse of only little over two years between the making of the will and her death, 95 C.J.S. Wills § 635, p. 910, to compare the provisions of her will with the items of the inventory, and we are struck by the comparative relationship of the two. (We mention here in relation to the next preceding paragraph that the inventory of her estate listed cash on hand of $7,386.92 and debts "none".) With the very detailed way testatrix disposed of her property—which coincides so well with what she left—we cannot but be persuaded she intended to dispose specifically of each material item of her property. Had she felt she was leaving only a life estate in the west one acre to Miss Robertson she no doubt would have named the remainder recipients. She would not have overlooked doing this, for, just before her last bequest clause, she was again reminded (as was pointed out above) of her home "which I leave to her." Though thus reminded she then wrote: "The balance of any money left in my estate". She could have easily written "The balance of my estate" had she desired. Having herself failed to do this, we cannot do it for her. 96 C.J.S. Wills § 759, pp. 162, 163.

◼ When we give the language of the will its ordinary, usual meaning, and when we consider the very explicit, careful way testatrix disposed of the various items of her property, we cannot but be convinced that the fee simple title was intended to be left Miss Robertson. To hold only a life estate was given, in view of our construction of the word "money" above, which

we think undoubtedly correct, would necessarily lead to the holding that testatrix, as to the remainder interest in the case, died intestate. The presumption is that a person executing his will intends to dispose of all his property. Briggs v. Peebles, 144 Tex. 47, 188 S.W.2d 147. While this presumption is not a controlling one, it is one of the material factors in arriving at the intention of testatrix. Kostroun v. Plsek, Tex.Com.App., 15 S.W.2d 220; 44 Tex. Jur. 707.

While the language of the first quoted paragraph disposing of the west one acre is in itself equivocal, the later expression "my home which I leave to her" definitely indicates a fee; and our view, when considered in the light of the entire will, we think follows the opinion of Justice Smith in writing for the court in Bergin v. Bergin, 158 Tex. ——, 315 S.W.2d 943, at page 946:

"In order that effect may be given the entire will, it necessarily must be construed as a whole. The intention of the testator must be ascertained by viewing the will in its entirety and all the provisions of the will must be looked to for the purpose of ascertaining the real intention of the testator, and if this can be ascertained from the language of the instrument, then any particular paragraph which, if considered alone, might indicate a contrary intention, must yield to the intention manifested by the whole instrument. See Darragh v. Barmore, supra [Tex. Com.App., 242 S.W. 714]; McMurray v. Stanley, 69 Tex. 227, 6 S.W. 412."

The judgment of the trial court was correct.

Affirmed.