**In re The ESTATE OF Georgia L. HALDIMAN, Deceased.**

No. 16832.

Court of Appeals of Texas, San Antonio.

May 18, 1983.

Rehearing Denied June 15, 1983.

Roger Wooldridge, San Antonio, for appellant.

Arthur H. Bayern, San Antonio, Robert M. Roller, Austin, for appellee.

Before CADENA, C.J., and CANTU and DIAL, JJ.

## OPINION

DIAL, Justice.

This is a will construction case. The deceased, Georgia L. Haldiman, executed a holographic will dated February 16, 1976. Ms. Haldiman died June 17, 1980, at the age of 84. The will was admitted to probate with Bexar County National Bank qualifying as Executor without bond.

Trial was to the court sitting without a jury. The court filed 28 findings of fact and 13 conclusions of law. In summary, the court construed the phrase "the money left over after all is paid, to go to the Heart Fund and Cancer Society" that appears near the conclusion of the Haldiman will, as a general residuary clause and held that pursuant to this general residuary clause, the entire estate of Ms. Haldiman, remaining after the payment of debts, expenses and specific bequests made in the will, was to pass to the American Heart Association, Texas Affiliate, Inc., and the American Cancer Society, Texas Division, Inc., in equal shares. The entire estate that was to be divided between these two charities was to include both real and personal property of Ms. Haldiman.

The appellants, Sadie Lumpkin, heirs of Georgia L. Haldiman suffering legal disabilities and the unknown heirs at law have perfected this appeal. Appellants allege seventeen (17) points of error. Points of error numbers 1, 2, 3, 13 and 14 contend that the court's findings of fact and conclusions of law that the phrase "the money left over after all is paid, to go to the Heart Fund and Cancer Society" was intended by the testatrix to be a general residuary clause for the benefit of the Texas Heart Association and the Texas Cancer Society is not supported by factually sufficient evidence and is against the great weight and preponderance of the evidence. These points of error also contend that the phrase is not ambiguous and that Haldiman did not intend the phrase to be a general residuary clause as a matter of law. Appellants allege that by the phrase "the money left over after all is paid", Ms. Haldiman meant to leave a specific cash bequest to the

named charities. The cash was to come from the money remaining after the other specific cash bequests had been paid.

Haldiman's holographic will first listed five specific cash bequests followed by the name of the executor. The will then contained the phrase in question followed by the signature of the testatrix and the signature of the two witnesses. Attached to the will were two separate sheets of paper. The first sheet contained the names of all the stock and the amount of shares owned by Haldiman. The second sheet contained a list of the names and addresses of every person mentioned in her will.

The standard of review for the case at bar is stated in *Ford v. Allen,* 526 S.W.2d 643 (Tex.Civ.App.—Austin 1975, no writ). In *Ford* the court held that "when specific findings and conclusions are filed, and a statement of facts is before the appellate court, the findings will be sustained if there is any evidence to support them. The appellate court will review the legal conclusions drawn from the facts found to determine their correctness." *Id.* at 644. In the review of no evidence claims, the court will consider only the evidence tending to support the finding, viewing it in the most favorable light in support of the finding, giving effect to all reasonable inferences that may properly be drawn therefrom and disregarding all contrary or conflicting evidence. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965). In the review of a claim of factually insufficient evidence, the court will consider all of the evidence, both the evidence tending to prove the fact as well as that tending to disprove the fact. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (Tex.1951).

█ The trial court held that the phrase "the money left over after all is paid, to go to the Heart Fund and Cancer Society" was ambiguous, and therefore construed the phrase to be a general residuary clause. We hold that the trial court's construction is correct. The court in *Stewart v. Selder,* 473 S.W.2d 3, 7 (Tex.1971) stated that "where the intention of the testator is not clearly expressed by the language of the will, it may be found by looking to the provisions of the instrument as a whole and to the circumstances surrounding its execution." Ms. Haldiman's holographic will did not contain the magic words that would have made the phrase in question a general residuary clause. Although not schooled in the law, Ms. Haldiman did make the effort to dispose of her possessions in an orderly manner. The Supreme Court in *Welch v. Staach,* 531 S.W.2d 319 (Tex.1975) stated that on a number of occasions they had considered informal language used by a layman who did not have legal advice in drawing a will. "We have said that in such instances the court will not construe lay language technically but will do so liberally in the endeavor to arrive at the intent of the testator." *Id.* at 321.

Ms. Haldiman intended the phrase to be a general residuary clause. Certain words in the will point to an intent not to die intestate. Twice the testatrix asserted on the face of her will that after payment of all debts, certain bequests should be made. It was one of the first and also the last thing she stated. She made specific cash bequests to every one of her living known relatives, except one whose whereabouts were unknown to her. Her words in the phrase in question are words of a general residuary clause. The phrase "the money left over, after all is paid" appears at the very end of the will. The sentence following the phrase in question states that this is her last will. The signature of the testatrix and those of the witnesses immediately follow. The court in *Urban v. Fossati,* 266 S.W.2d 397, 399 (Tex.Civ.App.—San Antonio 1954, writ ref'd n.r.e.) in determining whether a particular sentence in a holographic will was a general residuary clause said:

> We shall view her words in a non-legal and non-technical sense, because she obviously lacked the skill to do otherwise. A lawyer, in phrasing the general residuary clause, would have said "all the rest and residue," and in doing so would have made our task easy by reason of the precise and exact meaning of the legalis-

tic phrase. But a layman would quite naturally use the phrase "what remains" or "what is left", in precisely the same sense, and would reason with some force that "what is left" is also the "residue" or "the rest."

*Id.* at 399.

The court in *Alexander v. Botsford,* 439 S.W.2d 414, 416 (Tex.Civ.App.—Dallas 1969, writ ref'd n.r.e.) held that if there is any language to be found in the will which may reasonably be interpreted as an intentional disposition by the testatrix of the residue, the court should place that construction upon it, because there is a strong presumption, from the mere fact of making a will, that the testator intended to dispose of his entire estate and did not intend to die intestate as to the whole or any part of his property, unless a contrary intention is clearly expressed or necessarily implied. Accordingly, we overrule appellant's points of error 1, 2, 3, 13 and 14.

Appellant's points of error 4, 5 and 6 allege that the trial court's finding that Haldiman did not intend to only dispose of cash in her estate is not supported by factually sufficient evidence and is against the great weight and overwhelming preponderance of the evidence. Appellant's points of error 15, 16 and 17 likewise contend that there is no evidence or in the alternative insufficient evidence that the testatrix intended to dispose of her entire estate and not die intestate as to a substantial portion of her estate. Continuing to use the same standards of review set out above for a trial courts findings, we hold that the trial court correctly construed the intent of the testatrix.

A review of the evidence shows that if we follow appellant's contention that Haldiman's bequest to the American Cancer Society and the American Heart Fund was merely a specific bequest of the money remaining in her estate after all bills and debts had been paid, the testatrix would have died intestate as to approximately 85% of her estate. Appellants contend that when the testatrix used the word "money" in the phrase "the money left over after all

is paid" she meant money in its literal and technical sense. Appellants cite *Stewart, supra; Weathers v. Robertson,* 331 S.W.2d 87 (Tex.Civ.App.—Beaumont 1959, writ ref'd n.r.e.); and *Foy v. Clemmons,* 365 S.W.2d 384 (Tex.Civ.App.—Dallas 1963, writ ref'd n.r.e.) for the will construction rule that words will be given their ordinary and usual meaning unless there appears a contrary intent in the will. They contend that there is no evidence or insufficient evidence in the case at bar that money was intended to mean anything but cash or coin. These three cases are distinguishable.

In *Weathers* the issue was whether the testatrix gave a life estate or a fee simple in a particular acre of land. If she had given a life estate, the contestants alleged that the remainder in the life estate would pass to them through the residuary clause phrase "the balance of any money left in my estate." The court in *Weathers* held that given the record before them and looking at the will as a whole, the testatrix clearly intended to bequeath a fee simple and not a life estate; therefore, the use of the word "money" in the residuary clause was not meant to include a remainder interest in real estate. *Id.* at 90. In *Stewart* the court held that the use of the word cash by the testatrix included only the checks and bank deposits on hand at her death and not the stocks and bonds she acquired, after she had written her will, by devise and descent from her mother and step-father. The court reasoned that even though the testatrix had an interest in the community estate of her step-father and mother before the death of her step-father, there was no evidence as to the nature and value of such property at the time she made her will. However, the *Stewart* court did recognize that the word "cash" in its strict sense refers to coins and paper money. It is also used, less strictly, to mean not only money but also checks and demand deposits in banks and saving institutions. The court also stated that the word "money" is a term of flexible meaning that ordinarily refers to cash or coin, but has often been construed in will cases to mean wealth or property.

*Id.* at 9. The *Foy* court held the will of the testatrix to be unambiguous and therefore gave the word "money" used in the residuary clause its usual and ordinary sense. *Id.* at 386.

■ We hold that Haldiman, in the phrase in question, meant to dispose of her entire estate, both real and personal and not die intestate as to any of her property; therefore, in the present case "money" was meant to include wealth and property. The courts have long held that "money" in its more general sense means wealth, especially if a strict interpretation of the term would result in partial intestacy. *Paul v. Ball,* 31 Tex. 10 (Tex.1868). The court in *Haynes v. Henderson,* 345 S.W.2d 857, 861 (Tex.Civ.App.—Austin 1961, writ ref'd n.r.e.) held that the use of the words "sum" and "money" in testamentary instruments are terms of flexible meaning and may include all kinds of property, real and personal. The *Haynes* court relied on the *Flower v. Dort,* 260 S.W.2d 685 (Tex.Civ. App.—Fort Worth 1953, writ ref'd n.r.e.) decision for the proposition that in a comprehensive sense money means wealth, equivalent to property.

The facts show that Haldiman was a widow whose only child had died some 24 years earlier. She moved to San Antonio after the death of her husband because two of her sisters lived here. The will provided for every living relative whose whereabouts were known to the testatrix. Haldiman listed all the stocks and bonds she owned and attached it to the will along with the names and addresses of everyone mentioned in the will. Although there was no specific devise of her home, household furnishings or stocks and bonds, the trial court concluded that the testatrix meant the phrase "the money left over after all is paid" to include the money from the sale of her home, home furnishings and stocks. Ms. Haldiman did not have sufficient cash at the time the will was executed to cover the five specific cash bequests. If we hold as appellants urge, Ms. Haldiman would have died intestate as to 85% of her property. In *Shriners Hospital for Crippled Children of Texas v. Stahl,*

610 S.W.2d 147, 151 (Tex.1980) the court held that the mere making of a will is evidence that the testator had no intent to die intestate and creates a presumption that the testator intended to dispose of his entire estate, and that he did not intend to die intestate as to the whole or any part of his property. The court also concluded that if a will is open to two constructions, that interpretation will be given it which prevents intestacy. The court, citing *Briggs v. Peebles,* 144 Tex. 47, 188 S.W.2d 147, 150 (1945), stated that:

> where a person makes a will the general presumption prevails that the testator intended to dispose of all of his property, and there is no presumption that the testator intended to die intestate as to part of his estate if the words used in the will may carry the whole of his property.

We therefore overrule appellants points of error 4, 5, 6, 15, 16 and 17.

■ Appellants in points of error 7, 8 and 9 contend that the trial court erred in finding that Haldiman listed the shares of stock in the list attached to her will in order to facilitate the administration of her estate. Appellants contend the finding is not supported by any probative evidence, nor is it supported by factually sufficient evidence, or it is against the great weight and overwhelming preponderance of the evidence. They further contend the evidence could only show that Ms. Haldiman intended to include her stocks and bonds in her use of the word "money".

Included in our overruling of appellants points of error regarding the disposition of the entire Haldiman estate, we also uphold the trial court's finding that by attaching a list of her stocks and bonds, Haldiman intended to facilitate the administration of her estate. Items such as stocks and bonds are often harder to find and locate than is realty. The court concluded that since there was no specific bequest of these individual stocks, Haldiman intended to include these in the disposition of her estate along with her realty. The court in *Bergin v. Bergin,* 159 Tex. 83, 315 S.W.2d 943, 946 (Tex.1958) stated that "in order that effect

may be given the entire will, it necessarily must be construed as a whole. The intention of the testator must be ascertained by viewing the will in its entirety and all the provisions of the will must be looked to for the purpose of ascertaining the real intention of the testator." Appellants' points of error 7, 8 and 9 are overruled.

■ Lastly, in points of error 10, 11 and 12, appellants contend that the trial court erred in finding that Haldiman made specific provisions or mentioned in her will all her living relatives whose whereabouts were known to her. Appellants contend that the finding of fact is not supported by probative evidence, nor by factually sufficient evidence; or, in the alternative, is against the great weight and preponderance of the evidence.

A review of records show that Haldiman made specific bequests to all her relatives save one, the daughter of one of her sisters, whose whereabouts were unknown. Having made specific bequests to these relatives indicates that Haldiman recognized all her known relatives in her will. In *Huffman v. Huffman*, 161 Tex. 267, 339 S.W.2d 885, 889 (Tex.1960) the court stated that the very purpose of requiring a will to be in writing is to enable the testator to place it beyond the power of others, after he is dead, to change or add to his will or to show that he intended something not set out in, or different from, that set out in his will.

Appellants points of error 10, 11 and 12 are therefore overruled. Our holding that there is evidence as a matter of law includes a holding that the evidence is also factually sufficient to uphold the trial court's findings.

The judgment of the trial court is affirmed.