

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-15-00353-CV

ESTATE OF GLENDA RHOADES,
DECEASED

----------

FROM COUNTY COURT AT LAW NO. 2 OF PARKER COUNTY
TRIAL COURT NO. CIV-13-0909

----------

## CONCURRING[1] AND DISSENTING OPINION

----------

### I. INTRODUCTION

This is an appeal from the trial court's summary judgment construing the will of the decedent, Glenda Rhoades. Because the Majority Opinion fails to properly apply the rules of will construction to Rhoades's will and construes Rhoades's will contrary to her expressed intent, I dissent.

----

[1]I concur with the Majority Opinion's disposition of Appellants' jurisdictional issue.

## II. BACKGROUND

Rhoades signed a will in which she devised all of her interest in her residential homestead, all of her personal property, and all of the rest of her estate to her father Glen; however, if her father predeceased her—as is the case here—she provided that "his portion" was to be distributed to Appellee Elise Kinler for the benefit of Kinler and Kinler's son. Rhoades then provided that any other property that had not been disposed of under any other provision of her will should be distributed to her heirs-at-law, who are Appellants Norma Anderson, Paula Gilleland, Gerald Don Marrs, Joann Dycus, and Vicki George.

Rhoades's will provided for an independent administration and named Kinler as the independent executor. After Rhoades's death, Kinler filed an application to probate Rhoades's will. Appellants filed a petition for declaratory judgment, seeking a declaration that Rhoades's estate passed to Appellants under the "residuary clause" because the distributions to Rhoades's father had lapsed. Kinler likewise filed a declaratory-judgment petition, requesting a declaration that the entire estate passed to her based on the construction of the will as a whole. Kinler and Appellants filed competing motions for summary judgment, as well as responses. The trial court signed an order granting Kinler's summary-judgment motion and denying Appellants' summary-judgment motion. Appellants perfected this appeal and raise two issues: the trial court erred by granting Kinler's motion for summary judgment and erred by denying Appellants' motion for summary judgment.

2

### III. The Trial Court Did Not Err by Granting Kinler's Motion for Summary Judgment and by Denying Appellants' Motion for Summary Judgment

### A. Standard of Review

Absent ambiguity, the construction of a will is a matter of law.[2] *Penland v. Agnich*, 940 S.W.2d 324, 326 (Tex. App.—Dallas 1997, writ denied). Accordingly, we review de novo the question of the construction of an unambiguous will. *See Harris v. Hines*, 137 S.W.3d 898, 904 (Tex. App.—Texarkana 2004, no pet.). In construing a will, our objective is to discern and effectuate the testatrix's intent as reflected in the instrument as a whole, giving effect to all its parts. *Hysaw v. Dawkins*, 483 S.W.3d 1, 7 (Tex. 2016); *San Antonio Area Found. v. Lang*, 35 S.W.3d 636, 639 (Tex. 2000); *Gee v. Read,* 606 S.W.2d 677, 680 (Tex. 1980). The intent must be drawn from the will, not the will from the intent. *Hysaw*, 483 S.W.3d at 7. Thus, we focus not on what the testatrix intended to write but on the meaning of the words she actually used. *Id.* Ascertaining a testatrix's intent from the four corners of a will requires careful examination of the words used. *Id.* If possible, all parts of the will must be harmonized, and every sentence, clause, and word must be considered in ascertaining the testatrix's intent. *See Welch v. Straach*, 531 S.W.2d 319, 322 (Tex. 1975); *Steger v. Muenster Drilling Co.*, 134 S.W.3d 359, 372 (Tex. App.—Fort Worth 2003, pet. denied). We presume that the testatrix placed nothing superfluous or meaningless in her will and that she intended every word to play a

---

[2]Kinler and Appellants agree that Rhoades's will is unambiguous.

3

part in the disposition of her property. *See Steger*, 134 S.W.3d at 372; *Cooley v. Williams*, 31 S.W.3d 810, 812 (Tex. App.—Houston [1st Dist.] 2000, no pet.).

## B. Rhoades's Will

Article III and Article V of Rhoades's will provide, in pertinent part, as follows.[3]

## III.
## DISPOSITION OF ESTATE

A.      I give all of my interest in the real property and the improvements thereto which constitute my residential homestead at the time of my death to Glen Rhoades in equal shares.

B.      I give, devise[,] and bequeath all of my personal property to Glen Rhoades in equal shares.

C.      I give, devise[,] and bequeath all of the rest of my estate of whatsoever kind and wheresoever situated as follows to Glen Rhoades. In the event that Glen Rhoades should predecease me, *his portion* shall be distributed to ELISE KINLER for the benefit of Elise and Michael Kinler. In the event that Elise Kinler should predecease me, then said portion shall be distributed to Michael Kinler.

D.      Any other property of mine that has not been disposed of under any other provision of this Will shall go and be distributed to my heirs-at-law. Their identity and respective shares shall be determined in all respects as if my death had occurred immediately following the happening of the event requiring such distribution, and according to the laws of Texas then in force governing the distribution of the estate of an intestate.

     . . . .

---

[3]Rhoades's entire will is attached hereto as Appendix A.

4

# V.
## CONTINGENT TRUSTS

. . . .

TRUST FOR GLEN RHOADES: In the even[t] that GLEN RHOADES is, at the time of my death, a resident of a residential care home, nursing home, assisted living facility or similar facility, if and in that event I direct that *his portion as described in Article III above* shall be distributed to my Trustee, IN TRUST NEVERTHELESS, for the uses and purposes hereinafter set forth. My Trustee shall not distribute such property outright, but instead my Trustee shall hold all of such property in separate trust for the supplemental needs of GLEN RHOADES as follows:

A. This trust shall be titled The Glen Rhoades Supplemental Needs Trust. I direct that the trustee shall provide for the supplemental needs of Glen Rhoades without interfering with or reducing the benefits Glen Rhoades would be entitled to receive from any state or federal agency and to maximize the benefits available to Glen Rhoades. I intend that the assets remaining in trust for Glen Rhoades be used to supplement other benefits that Glen Rhoades might be entitled to receive and explicitly not be used for Glen Rhoades's basic support needs until the death of Glen Rhoades.

B. Upon the death of Glen Rhoades, the remainder, if any, shall be distributed to Elise Kinler. In the event that Elise Kinler has predecease[d] the final distribution, said remainder shall be distributed to Michael Kinler. [Emphasis added.]

## C. The Parties' Positions

### 1. Appellants' Position

Appellants assert that because Kinler is not mentioned in Article III, Paragraphs A or B, the gifts to Glen identified in those paragraphs "lapsed." Accordingly, Appellants argue that these lapsed gifts passed to them under the "residuary clause" set forth in Article III, Paragraph D. Appellants contend that

5

"[t]he issue before this Court is to determine which paragraph—Article III C, or Article III D—is the true residuary clause in Decedent's Will." Appellants admittedly exclude Article V from their analysis of Rhoades's will.[4]

## 2. Kinler's Position

Kinler asserts that "this is not a complicated will dispute." She argues that the will named one beneficiary, Rhoades's father Glen, and named her as the first alternate or contingent beneficiary. According to Kinler, Glen was to receive all of Rhoades's estate as his "bucket," and then his "bucket" was to pass to Kinler if he predeceased Rhoades. Kinler points out that Article III, Paragraph C gifts to her Glen's "portion" after identifying what constituted Glen's portion in Paragraphs A, B, and C. She further contends that Article V specifically explains that Glen's "portion" means his entire collective interest. Kinler argues that applying the rules of will construction and construing the will as a whole, she is entitled to all of Rhoades's interest in the residential homestead (Paragraph A), all of Rhoades's personal property (Paragraph B), and all of the rest of Rhoades's estate (Paragraph C) because these gifts—which are Glen's portion

---

[4]Appellants further argue:

> There is no language in Article V (or elsewhere in the Will) which directs this Court to use the clarity of Article V to help bolster [Kinler's] alleged entitlement under Article III. . . . Because Glen Rhoades predeceased the Decedent, the only provision of the Will which determines the disposition of Decedent's estate is Article III. [Kinler's] pleas to the trial court to treat Article III as if it contained the words found in Article V should have been ignored.

6

under Rhoades's will—passed over to her as the first named contingent beneficiary of Glen's portion if Glen predeceased Rhoades.  Kinler contends that Article III, Paragraph D addresses disposition of Rhoades's estate, including Glen's portion, in the event the contingent beneficiaries named in the preceding paragraphs predeceased Rhoades; because she, Kinler, is a contingent beneficiary who did not predecease Rhoades, Kinler asserts Paragraph D was not triggered.

### D.  De Novo Construction of Rhoades's Will Applying the Rules of Will Construction

#### 1.  The Will is Construed as a Whole to Effectuate the Testatrix's Intent

The cardinal rule of will construction is that the entire will is examined to determine the testatrix's intent.  *See Hysaw*, 483 S.W.3d at 7 ("Today, we reaffirm our commitment to a holistic approach aimed at ascertaining intent from all words and all parts of the conveying instrument"); *Heller v. Heller*, 114 Tex. 401, 410, 269 S.W. 771, 774 (1925) ("[A]n elementary rule of construction with reference to wills is that the testator's intention is to be collected from the whole of the will taken together, and not from detached portions."); *see also Lang*, 35 S.W.3d at 639; *Bergin v. Bergin*, 159 Tex. 83, 89, 315 S.W.2d 943, 946–47 (1958); *Disabled Am. Veterans v. Mullin*, 773 S.W.2d 408, 410 (Tex. App.—San Antonio 1989, no writ); George W. Thompson, 2 *Construction and Interpretation of Wills* § 41 (1928) (describing "the first rule of construction" with respect to wills as ascertaining the intention of the testator from the four corners of the will).

An examination of Rhoades's entire will shows her intent was (1) to leave her entire estate to her father Glen, either directly as set forth in Article III or by means of a trust as set forth in Article V if Glen resided in a nursing home at the time of her death, and (2) to leave Glen's portion of her estate, i.e., her entire estate as set forth in Article III, to Kinler if Glen predeceased her or to leave pursuant to Article V the entire balance remaining in Glen's trust to Kinler upon Glen's death. Thus, Rhoades's desired testamentary scheme, as ascertained from her entire will, was to name her father Glen as the primary beneficiary of her entire estate, to name Kinler the first alternate or contingent beneficiary, to name Kinler's son as the second alternate or contingent beneficiary, and to provide that any undisposed-of property would be distributed to her heirs-at-law, i.e., according to the laws of intestacy.

The Majority Opinion does not examine Rhoades's entire will, the four-corners of the will, to determine her intent or her testamentary scheme as a whole. Contrary to this cardinal rule of will construction, as urged by Appellants, the Majority Opinion views Article III in a vacuum without any effort to reconcile it with Rhoades's intent as expressed in Article V—that "his [Glen's] portion" of her estate includes all of the property identified in Article III: the real property and improvements constituting Rhoades's residential homestead, Rhoades's personal property, and all of the rest of Rhoades's estate of whatsoever kind and wheresoever situated. *But see Hysaw*, 483 S.W.3d at 7 (requiring intent to be determined from examination of all parts of will); *Lang,* 35 S.W.3d at 639 (same);

8

*Bergin*, 159 Tex. at 89, 315 S.W.2d at 946–47 (same); *Heller*, 114 Tex. at 410, 269 S.W. at 774 (same).  To the extent Article III, Paragraph C standing alone could somehow possibly be construed as limiting Glen's portion to only "the rest of [Rhoades's] estate of whatsoever kind and wheresoever situated,"[5] that possible stand-alone construction of Paragraph C cannot destroy Rhoades's explicit expressed intention set forth in the remaining portion of her will (Article V) as to what constitutes Glen's portion of her estate.  *See, e.g.*, *Bergin*, 159 Tex. at 89, 315 S.W.2d at 947 ("We have examined the will in the light of these cardinal rules and hold that the first paragraph of the will, which, standing alone would leave an absolute fee title to respondent, cannot destroy the effect of the remaining portions of the will, which plainly provide that respondent shall receive the benefits of the stock only until she remarries or dies.").  The Majority Opinion fails to give effect to Rhoades's intent expressed in her will that her father Glen, as *his portion* of her estate, take all of the real property and improvements constituting her residential homestead, her personal property, and all of the rest

---

[5]I do not believe such a construction is possible in any event.  To construe the phrase "his portion" in Article III as relating solely to the property described in Paragraph C, the Majority Opinion essentially redrafts Paragraph C to provide a limitation Rhoades omitted from her will.  The construction propounded by the Majority Opinion rewrites Paragraph C to add the italicized language:  "I give, devise and bequeath all of the rest of my estate of whatsoever kind and wheresoever situated as follows to Glen Rhoades.  In the event that Glen Rhoades should predecease me, his portion *[as described solely in the preceding sentence]* shall be distributed to ELISE KINLER for the benefit of Elise and Michael Kinler."  [Emphasis added.]  *See Lang*, 35 S.W.3d at 639 (stating that courts must not redraft wills to vary or add provisions "under the guise of construction of the language of the will" to reach a presumed intent).

9

of her estate of whatsoever kind and wheresoever situated either directly or via a trust if he resided in a nursing home at the time of her death and that if Glen predeceased her, *his portion* be given to Kinler.

## 2. Same Term Is to be Given Same Meaning

"When the testator uses the same words in different parts of the will with reference to the same subject matter, we presume he intended the words to have the same meaning unless the context indicates the testator used the words in a different sense." *Eisen v. Capital One, Nat'l Ass'n*, 232 S.W.3d 309, 313 (Tex. App.—Beaumont 2007, pet. denied); *see also Weathers v. Robertson*, 331 S.W.2d 87, 90 (Tex. Civ. App.—Beaumont 1959, writ ref'd n.r.e.) (stating that a term used in a will should be construed as having the same meaning throughout the will); 2 *Construction and Interpretation of Wills* § 78 (explaining that "words or phrases occurring more than once in a will, or the same words used in different parts of the same will, are presumptively used in the same sense and are to receive the same construction").

The second sentence of Paragraph C of Article III provides, "In the event that Glen Rhoades should predecease me, *his portion* shall be distributed to ELISE KINLER for the benefit of Elise and Michael Kinler." [Emphasis added.] Rhoades's intent in using the term "his portion" in Paragraph C of Article III is clarified by her use of the exact same term in Article V. The term "his portion" as used in Article V straightforwardly encompasses as Glen's portion of Rhoades's estate, all of Rhoades's "interest in the real property and the improvements

10

thereto which constitute my residential homestead[,]" "all of [Rhoades's] personal property,]" and "all of the rest of [Rhoades's] estate of whatsoever kind and wheresoever situated." The term "his portion" in Paragraph C of Article III should be given the same meaning that same term has by express definition in Article V. *See Eisen,* 232 S.W.3d at 314 (construing the term "beneficiary" in both Article VI and Article IX of testator's will to have the same definition pursuant to the definition testator provided for the term in Article VI).

The Majority Opinion, however, wholly ignores Article V and fails to apply the rule of will construction that the same term used in the same will should be given the same meaning. Consequently, under the Majority Opinion's holding, the term "his portion" has two completely different meanings in the will:

- In Article III: per the Majority Opinion's holding, "his portion" consists solely of the property described in Paragraph C in Article III (i.e., a parcel of non-homestead real property).

- In Article V (ignored by the Majority Opinion): per the express language of the will, "his portion" consists of all property devised to Glen as described in Article III (i.e., all of Rhoades's interest in the real property and improvements thereto constituting her residential homestead, all of her personal property, and all of the rest of her estate of whatsoever kind and wheresoever situated).

*But see id.* (holding that when testator uses same words in different parts of same will, words presumed to have same meaning); *Weathers*, 331 S.W.2d at 90 (stating that term used in will should be construed as having same meaning throughout will).

11

### 3.  A Will's Internal Formatting Cannot Thwart the Testatrix's Intent

"[A] will is not to be read so as to contradict itself if its apparent contradictions can be reconciled by bringing the various clauses together and deducing a consistent interpretation from the whole context." *Jones' Unknown Heirs v. Dorchester*, 224 S.W. 596, 601 (Tex. Civ. App.—Amarillo 1920, writ dism'd w.o.j.); *see also Hysaw*, 483 S.W.3d at 13 (explaining that "apparent inconsistencies or contradictions must be harmonized, to the extent possible, by construing the instrument as a whole").  Appellants' position, adopted by the Majority Opinion, stems primarily, if not exclusively, from the labeling of the paragraphs in Article III of Rhoades's will as Paragraphs A, B, C, and D.  That is, Appellants' position is not based on the actual *words* of Rhoades's will but on the internal Paragraph A, B, C, and D formatting of Rhoades's will.  Based on the will's internal formatting's use of the letters A, B, C, and D, Appellants treat each of these paragraphs as separate stand-alone provisions.[6]  But reading the actual words of these four paragraphs together, it is clear that Rhoades intended to name her father Glen as the will's beneficiary and to name Kinler as the first

---

[6]Appellants assert the following:

> Kinler is mentioned only in Section C.  Only Glen Rhoades is mentioned in Sections A and B, and he failed to survive the Decedent.  Unambiguously, Decedent failed to include language in either Section A or Section B which would cause those lapsed bequests to pass to Kinler.  Instead, Decedent left a very unambiguous residuary bequest in Section D that left all of the "lapsed" gifts to the Heirs-at-Law.

12

alternate or contingent beneficiary. Simply removing the internal A, B, C, and D

paragraph formatting makes this obvious:

> I give all of my interest in the real property and the improvements thereto which constitute my residential homestead at the time of my death to Glen Rhoades in equal shares. I give, devise[,] and bequeath all of my personal property to Glen Rhoades in equal shares. I give, devise[,] and bequeath all of the rest of my estate of whatsoever kind and wheresoever situated as follows to Glen Rhoades. In the event that Glen Rhoades should predecease me, *his portion* shall be distributed to ELISE KINLER for the benefit of Elise and Michael Kinler. In the event that Elise Kinler should predecease me, then said portion shall be distributed to Michael Kinler. Any other property of mine that has not been disposed of under any other provision of this Will shall go and be distributed to my heirs-at-law. Their identity and respective shares shall be determined in all respects as if my death had occurred immediately following the happening of the event requiring such distribution, and according to the laws of Texas then in force governing the distribution of the estate of an intestate. [Emphasis added.]

*See Welch*, 531 S.W.2d at 322 ("[I]t is always permissible, in fact proper, to look

beyond mere grammatical form to what may be termed the internal evidence of

the writer's intention."); *cf. Dorchester*, 224 S.W. at 602 (construing seventh

paragraph of will by looking to eighth and ninth paragraphs of will). By adopting

Appellants' contention that Paragraphs A, B, C, and D of Article III are stand-

alone provisions that cannot be read in connection with one another, the Majority

Opinion improperly elevates grammatical form over testamentary-scheme

substance. *See McMurray v. Stanley*, 69 Tex. 227, 230, 6 S.W. 412, 413 (1887)

("In construing the will, all its provisions should be looked to, for the purpose of

ascertaining what the real intention of the testatrix was; and . . . any particular

13

paragraph of the will which, considered alone, would indicate a contrary intent, must yield to the intention manifested by the whole instrument.").

### 4. Contingent Beneficiaries Take Over Residuary Beneficiaries

Article III of Rhoades's will sets forth a list of contingent beneficiaries—Elise Kinler first and then Michael Kinler—who would take Glen's portion of her estate in the event Glen predeceased her. Notably, Rhoades utilized the same disposition for the remainder of the trust in Article V. Because Rhoades listed contingent beneficiaries for Glen's portion of the estate and because the named contingent beneficiaries did not predecease Rhoades, there are no failed or lapsed gifts; thus, contrary to Appellants' position, the Anti-Lapse Statute does not apply. *See Rossi v. Rossi*, 448 S.W.2d 162, 164 (Tex. Civ. App.—Houston [14th Dist.] 1969, writ ref'd n.r.e.) ("The [Anti-Lapse Statute] is simply inapplicable where there is a valid testamentary disposition as a gift over and a legatee or devisee has predeceased the testator."). And this construction of Article III as containing no failed or lapsed gifts does not render Paragraph D meaningless, as the Majority Opinion states in a footnote. Paragraph D has a purpose: it acts as the residuary clause and provides for the disposition of the estate if the named contingent beneficiaries predeceased Rhoades. Based on the facts here, Paragraph D was not triggered because at least one of the named contingent beneficiaries—Kinler—was alive at the time of Rhoades's death. Simply because a provision is not triggered does not render it "meaningless." *Cf. In re M.M.M.*, 428 S.W.3d 389, 396 (Tex. App.—Houston [14th Dist.] 2014, pet.

14

denied) (holding statutory provision was not meaningless because it might rarely come into play; as long as there was any event that would trigger the need for the provision, it was not meaningless).

The mere fact that Article III, Paragraph D sets forth a residuary clause in favor of Appellants, Rhoades's heirs-at-law, does not detract from Rhoades's designation of contingent beneficiaries. *See, e.g.*, *Calloway v. Estate of Gasser*, 558 S.W.2d 571, 576 (Tex. Civ. App.—Tyler 1977, writ ref'd n.r.e.) (holding that when testator designated husband as primary beneficiary and others as contingent beneficiaries in event husband predeceased her and couple then divorced, contingent beneficiaries were entitled to take rather than residuary beneficiaries—even though husband was not dead but instead was only statutorily prohibited from taking—because by providing contingent beneficiaries, will reflected testator's intent that they take over residuary beneficiaries). Nor can a residuary clause require or place "a construction on a previous clause in order to create a residue" as Appellants and the Majority Opinion do here. *See* 2 *Construction and Interpretation of Wills* § 90. Appellants and the Majority Opinion construe the provisions of Article III in order to create the existence of a residuary clause under Paragraph D, claiming otherwise Paragraph D would be superfluous, instead of looking to Rhoades's intent that Kinler as a contingent beneficiary takes Glen's portion, regardless of whether that taking left anything for the residuary beneficiaries. *See Calloway*, 558 S.W.2d at 576.

15

## IV. Conclusion

Because, as set forth above, applying the well-settled rules of will construction to Rhoades's will, Kinler established as a matter of law that in the event that Glen predeceased Rhoades, Rhoades intended for Kinler to receive "his portion"—which consisted of the real property and improvements thereon comprising Rhoades's residential homestead, Rhoades's personal property, and any other property owned by Rhoades at her death—I would hold that the trial court did not err by granting Kinler's motion for summary judgment on her request for a declaration that Rhoades's entire estate passed to her, and I would overrule Appellants' first issue. Similarly, I would hold that the trial court did not err by denying Appellants' cross-motion for summary judgment; I would overrule Appellants' second issue. Accordingly, I would affirm the trial court's order granting the summary-judgment motion filed by Kinler and denying the cross-motion for summary judgment filed by Appellants. Because the Majority Opinion holds otherwise, I respectfully dissent.

/s/ Sue Walker
SUE WALKER
JUSTICE

DELIVERED: September 8, 2016

16

# APPENDIX A

# LAST WILL AND TESTAMENT

# OF

# GLENDA RHOADES

I, GLENDA RHOADES, of the County of PARKER and the State of Texas, being in good health, of sound and disposing mind and memory, do make and declare this instrument to be my Last Will and Testament, hereby expressly revoking all former Wills and Codicils made by me at any time heretofore, and intending hereby to dispose of all the property of whatever kind and wherever situated which I own, or in which I have any kind of interest at the time of my death.

## I.
## IDENTITY OF THE FAMILY

At the time of the execution of this Will, I am not married and I have no children.

## II.
## PAYMENT OF EXPENSES

I direct that all the expenses of my last illness, my funeral expenses, and my just personal debts, including any inheritance taxes, transfer taxes, and estate taxes which may be levied by the United States Government or by any state by reason of my death, shall be paid by my Independent Executor out of the residue of my estate as soon as conveniently may be done; provided that my Independent Executor, in such Executor's sole discretion, may distribute from time to time any real or personal property in my estate which at my death is subject to a lien securing an indebtedness upon it without discharging said indebtedness, if in my Independent Executor's judgment, the condition of my estate so requires. The distributee shall then be considered as having received my estate's equity in the property.

## III.
## DISPOSITION OF ESTATE

A. I give all of my interest in the real property and the improvements thereto which constitute my residential homestead at the time of my death to Glen Rhoades in equal shares.

B. I give, devise and bequeath all of my personal property to Glen Rhoades in equal shares.

C. I give, devise and bequeath all of the rest of my estate of whatsoever kind and wheresoever situated as follows to Glen Rhoades. In the event that Glen Rhoades

INITIALS: GR

230

should predecease me, his portion shall be distributed to ELISE KINLER for the benefit of Elise and Michael Kinler. In the event that Elise Kinler should predecease me, then said portion shall be distributed to Michael Kinler.

D.    Any other property of mine that has not been disposed of under any other provision of this Will shall go and be distributed to my heirs-at-law. Their identity and respective shares shall be determined in all respects as if my death had occurred immediately following the happening of the event requiring such distribution, and according to the laws of Texas then in force governing the distribution of the estate of an intestate.

## IV.
## DEFINITION OF SURVIVAL

Any legatee, devisee, donee, person or beneficiary with respect to all or any part of my estate who shall not survive until ninety (90) days after the date of my death, or until this Will is probated, whichever occurs earlier, shall be deemed to have predeceased me, and shall be treated for all purposes herein as though such person had predeceased me.

## V.
## CONTINGENT TRUSTS

TRUST FOR BENEFICIARIES UNDER THE AGE OF 25: In the event that any beneficiary has not reached the age of twenty-five (25) years, then in such event I give, devise and bequeath the share or shares of such beneficiary to my Trustee, IN TRUST NEVERTHELESS, for the uses and purposes hereinafter set forth. My Trustee shall not distribute such property outright, but instead my Trustee shall hold all of such property in separate trusts for the benefit of each such individual beneficiary and the records of my Trustee shall be kept accordingly. Each trust created by this Article shall be known by the name of the individual beneficiary for whom it is created (hereafter called "Beneficiary" of such trust), which individual shall be the primary beneficiary thereof.

A.    My Trustee shall not distribute to or for the benefit of each beneficiary, any of the income, nor corpus of each separate per stirpes share or trust created for that particular beneficiary until said beneficiary reaches the age of twenty-five years.

B.    Any income or corpus not so distributed or used shall be separately accumulated for each of my beneficiaries or their issue, and the separate per stirpes share or trust turned over to said beneficiary when he or she reaches the age of twenty-five (25) years, at which time my Trustee shall transfer, convey, deliver and pay over to said beneficiary, FREE FROM TRUST, all of the property then constituting his or her share of the trust estate.

C.    If any beneficiary of the trust shall die before complete distribution of his or her share, then upon the death of such beneficiary the share of such beneficiary as then constituted shall be distributed equally to said deceased beneficiary's children or his or her issue, per stirpes, as provided in Sections A and B above. If said deceased beneficiary has no living children then that beneficiary's

INITIALS: _____

---

LAST WILL AND TESTAMENT                           PAGE 2

portion shall be distributed equally among the then surviving residual beneficiaries.

D.     Any share or portion of a share of any trust created hereunder or any other property of mine that has not been disposed of under any other provision of this Will shall go and be distributed to my heirs at law.

TRUST FOR GLEN RHOADES: In the even that GLEN RHOADES is, at the time of my death, a resident of a residential care home, nursing home, assisted living facility or similar facility, if and in that event I direct that his portion as described in Article III above shall be distributed to my Trustee, IN TRUST NEVERTHELESS, for the uses and purposes hereinafter set forth. My Trustee shall not distribute such property outright, but instead my Trustee shall hold all of such property in separate trust for the supplemental needs of GLEN RHOADES as follows:

A. This trust shall be titled The Glen Rhoades Supplemental Needs Trust. I direct that the trustee shall provide for the supplemental needs of Glen Rhoades without interfering with or reducing the benefits Glen Rhoades would be entitled to receive from any state or federal agency and to maximize the benefits available to Glen Rhoades. I intend that the assets remaining in trust for Glen Rhoades be used to supplement other benefits that Glen Rhoades might be entitled to receive and explicitly not be used for Glen Rhoades's basic support needs until the death of Glen Rhoades.

B. Upon the death of Glen Rhoades, the remainder, if any, shall be distributed to Elise Kinler. In the event that Elise Kinler has predecease the final distribution, said remainder shall be distributed to Michael Kinler.

## VI.
## APPOINTMENT OF TRUSTEE

I nominate, constitute and appoint ELISE KINLER, to act as Trustee of the trust created in Article V herein. In the event that ELISE KINLER, shall predecease me or fail or refuse to qualify, or die, resign, or become unable to serve as Trustee during the administration of such trust, I hereby nominate, constitute and appoint NORMA ANDERSON to act as Trustee, and all of the powers, duties and responsibilities granted and imposed upon ELISE KINLER shall devolve upon and be exercised by NORMA ANDERSON.

## VII.
## TRUSTEE POWERS

The trusts created or arising by virtue of this, my Last Will and Testament shall be governed by and administered in accordance with the following provisions:

A.     The Trustee during the continuation of each trust shall have the sole and complete right to possess, control, manage, and dispose of each trust estate and the said Trustee shall have the powers, rights, responsibilities and duties given to or imposed upon trustees by the Texas Trust Code as such Code now exists.

B.     The Trustee shall at all times keep proper records and books of accounts which shall be open to the inspection of the beneficiaries at all reasonable times.

INITIALS: _____

C.     The Trustee shall act without bond of any kind, and shall be liable only for gross negligence, fraud or defalcation.

D.     The Trustee shall have full power, in the Trustee's discretion, to litigate, compromise, adjust and settle all claims arising out of or in connection with the trust and property of the trust, and the Trustee may employ counsel and other agents in the discharge of duties and determine and pay them a reasonable compensation.

E.     The Trustee shall be entitled to pay out of the trust estate or to be reimbursed for any and all legitimate expenses incurred in the management of the trust estate.

F.     The Trustee shall have the sole discretion to determine what is income or corpus of each respective trust, and shall apportion and allocate all receipts, credits, disbursements, expenses, and charges to income or corpus as the Trustee shall deem proper.

G.     The Trustee may resign by sending an acknowledged written notice to the trust beneficiaries thirty (30) days prior to resignation.

H.     As compensation for his services hereunder, my Trustee or his successor shall be entitled to charge the same fees customarily charged for similar services in other trusts at the time the services are rendered.

## VIII.
## APPOINTMENT OF EXECUTOR

I hereby nominate, constitute and appoint ELISE KINLER, as Independent Executor of my estate. In the event that ELISE KINLER, shall predecease me or fail or refuse to qualify, or die, resign, or become unable to serve during the administration of my estate, I hereby nominate, constitute and appoint NORMA ANDERSON, as Independent Executor, and all the powers, duties and responsibilities granted and imposed upon ELISE KINLER shall devolve upon and be exercised by NORMA ANDERSON.

If any individual Independent Executor or Executrix becomes unable to discharge his or her duties under this Will because of accident, physical or mental illness or deterioration, or other cause and does not resign, then upon certification in a form sufficient for the recording of a deed in the State of Texas by two medical doctors (neither of whom is a beneficiary under this Will) affirming that each has examined the Independent Executor or Executrix and that each has concluded, based on such examination, that the Independent Executor or Executrix is unable to discharge his or her duties under this Will, the Independent Executor or Executrix shall cease to serve, as if he or she had resigned, effective the date of the certification.

It is my will and desire and I hereby direct that in the administration of my estate, my Independent Executor or any successor shall not be required to furnish any bond of any kind and that no action shall be had in any court in the administration of my estate other than the probating of this,

INITIALS: _____

---

LAST WILL AND TESTAMENT                                          PAGE 4

233

my Last Will and Testament, and the filing of any inventory, appraisement and list of claims of my estate that may be required.

## IX.
## POWERS OF EXECUTOR

The estate created or arising by virtue of my death and this instrument, my Last Will and Testament, shall be governed by and administered in accordance with the following provisions:

A. I hereby grant unto my Independent Executor or any successor named above, full power and authority over any and all of my estate and they are hereby authorized to sell, manage, and dispose of the same or any part thereof, and in connection with any such sale or transaction, make, execute and deliver proper deeds, assignments and other written instruments and to do any and all things proper or necessary in the orderly handling and management of my estate.

B. My Independent Executor or any successor named above, shall have full power and authority to compromise, settle and adjust any and all debts, claims and taxes which may be due from or owing by my estate.

C. My Independent Executor or any successor named above, shall have full power and authority to deal with any person, firm, or corporation including any trusts or trust estates created by this, my Last Will and Testament.

D. My Independent Executor or any successor named above, shall have full power to borrow money at any time and in any amount from time to time for the benefit of my estate, from any person, firm, or corporation or from any bank or trust company and to secure the loan or loans by pledge, deed of trust, mortgage or other encumbrances on the assets of the estate and from time to time to renew such loans and give additional security.

E. As compensation for his services hereunder, my Independent Executor or any successor named above shall be entitled to charge the same fees customarily charged for similar services in other estates at the time the services are rendered.

## X.
## SPENDTHRIFT PROVISION

No interest of any beneficiary in the corpus or income of my estate or of any trust created herein shall be subject to assignment, alienation, pledge, attachment, or claims of creditors of such beneficiary and may not otherwise be alienated or encumbered by such beneficiary, except as may be otherwise expressly provided herein.

## XI.
## MAXIMUM TERM OF TRUST

If any trust created hereunder shall violate any applicable Rule Against Perpetuities or any

INITIALS: _____

234

similar rule or law, my Trustee is hereby directed to terminate said trust on the date limited by such rule or law and thereupon the property held in such trust shall be distributed to the persons then entitled to share such income, notwithstanding any provision of this Will to the contrary.

## XII.
## IN TERROREM CLAUSE

If any beneficiary under this Will shall in any manner contest or attack this Will or any of its provisions, any share or interest in my estate given to such contesting beneficiary under this Will is hereby revoked and shall be disposed of as part of the residue of my estate.

## XIII.
## DEFINITIONS AND INTERPRETATIONS

For purposes of interpretation of this, my Last Will and Testament, and the administration of the estate and trusts established herein, the following provisions shall apply:

A.    The words "child, children, descendants, issue," and similar terms shall be deemed only to include children born to, or adopted (on or before twenty-five years of age) in, a lawful marriage.

B.    When a distribution is directed to be made to any person's descendants "per stirpes," the division into stirpes shall begin at the generation nearest to such person that has a living member.

C.    The use of the masculine, feminine or neuter genders shall be interpreted to include the other genders, and the use of either the singular or the plural number shall be interpreted to include the other number, unless such an interpretation in a particular case is inconsistent with the general tenor of this instrument. Any references herein relating to my Independent Executor shall include his successors regardless of the gender of the successors.

D.    This Will shall be probated in accordance with the laws of Texas, and should any provisions of the same be held unenforceable or invalid for any reason, the unenforceability or invalidity of said provision shall not effect the enforceability or validity of any other part of this Will.

IN WITNESS WHEREOF, I, GLENDA RHOADES, hereby sign my name to this, my last Will, on each page of which I have placed my initials, on this 4 day of _Octber_, 2007, at Aledo, Texas.

_____
GLENDA RHOADES,
Testator

INITIALS: _____

LAST WILL AND TESTAMENT                                                    PAGE 6

## ATTESTATION

The foregoing instrument was signed in our presence by GLENDA RHOADES and declared by to be last Will. We, at the request and in the presence of GLENDA RHOADES and in the presence of each other, have subscribed our names below as witnesses on this 4th day of October, 2007.

_Shelia Harvey_
WITNESS
_100 Maverick_
STREET ADDRESS
_Aledo TX. 76008_
CITY AND STATE

_Kenton Harvey_
WITNESS
_100 Maverick_
STREET ADDRESS
_Aledo TX 76008_
CITY AND STATE

INITIALS: _____

LAST WILL AND TESTAMENT

PAGE 7

236

## SELF PROVING AFFIDAVIT

STATE OF TEXAS

COUNTY OF PARKER

BEFORE ME, the undersigned authority, on this day personally appeared GLENDA RHOADES, _Shelia Harvey_ and _Kenton Harvey_, known to me to be the Testator and the witnesses, respectively, whose names are subscribed to the annexed or foregoing instrument in their respective capacities, and all of said persons being by me duly sworn, the said GLENDA RHOADES, Testator, declared to me and to the said witnesses in my presence that said instrument is her Last Will and Testament and that she had willingly made and executed it as her free act and deed; and the said witnesses, each on their oath stated to me, in the presence and hearing of the said Testator, that the said Testator had declared to them that said instrument is her Last Will and Testament, and that she executed same as such and wanted each of them to sign it as a witness; and upon their oaths each witness stated further that they did sign the same as witnesses in the presence of the said Testator and at her request; that said Testator was at that time twenty-five years of age or over (or being under such age, was or had been lawfully married, or was then a member of the armed forces of the United States or of an auxiliary thereof or of the Maritime Service) and was of sound mind; and that each of said witnesses was then at least fourteen years of age.

_GLENDA RHOADES, Testator_

_Shelia Harvey_
Witness

_Kenton Harvey_
Witness

SUBSCRIBED AND SWORN TO BEFORE ME by the said GLENDA RHOADES, Testator, and by the said _Shelia Harvey_ and _Kenton Harvey_, Witnesses, this 4 day of _Oct_, A.D. 2007.



A. HARVEY
MY COMMISSION EXPIRES
May 18, 2010

_Notary Public, State of Texas_

INITIALS _____

LAST WILL AND TESTAMENT                                    PAGE 8

237